Kenneth VEIT, Appellant,

v.

NORTH WALES BOROUGH.

Kenneth Veit,

v.

North Wales Borough, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 11, 2002.
Decided June 12, 2002.

Carol A. Sweeney, Lansdale, for appellant.

David J. Truelove, Bristol and Bruce W. Vosburgh, Conshohocken, for appellee.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, MIRARCHI, Jr., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

These cross-appeals are from an order of the Court of Common Pleas of Montgomery County (trial court) that granted the appeal of Kenneth Veit (Veit) from a decision of the North Wales Civil Service Commission (Commission) upholding Veit's termination from his position as Chief of Police of North Wales Borough (the Borough). Specifically, the trial court reversed the Borough's termination of Veit's employment, and remanded the matter to the Borough so that Veit would be afforded a pre-termination hearing. The trial court further ordered that Veit be restored to his status as of May 26, 1999 when he was suspended without pay from his position. The trial court also certified that its decision involved a controlling question of law and that an immediate appeal might materially advance the termination of the matter. Upon Veit's petition, we granted leave to hear these interlocutory appeals. We reverse and remand.

The Commission made the following relevant findings of fact. Veit became employed as Chief of Police for the Borough in 1973. Because of the small size of the Borough's police department, its police

chief is by necessity a "working chief," that is, a "street cop," who directly reports to the Borough's Mayor. The Mayor, as chief executive of the Borough, is the police chief's immediate supervisor. The Borough Council is the Borough's legislative body with ultimate responsibility to hire and discipline personnel and to approve the budget. Pursuant to The Borough Code,[1] the Borough established the Commission, which in turn promulgated rules and regulations that were approved by the Borough Council.

All police officers, including the police chief, are subject to the provisions of the applicable collective bargaining agreement between the Borough and all full-time officers. This agreement provides for a sick leave policy that mandates that sick leave in excess of two consecutive working days be authorized after presentation of a doctor's note certifying that the officer's condition prevents the officer from performing his or her duties. The Borough Code further provides that all police officers must undergo an annual physical examination, no later than February 28 of each year, to be conducted by a physician of the Borough's choosing. The results of such examination are to be made available to the Mayor and the Borough Council so that they may determine whether the officer is physically capable of performing his or her duties. With respect to the police chief, the Borough adopted required standards for the position, including an ability to establish and maintain an effective and harmonious relationship with, among others, other Borough officials.

In July 1998, Veit received a reprimand from the Borough Council for inefficiency, neglect, disobedience, and conduct unbecoming a police chief. The reprimand pertained to Veit's refusal to cooperate with the Mayor, the Borough Council, and certain procedural protocols to hire a new police officer. With respect to this matter, Veit unilaterally withdrew a federal Cops-Fast Grant application in contravention of the Borough Council's public directive. Veit was warned that the Borough Council would proceed with disciplinary action should his inappropriate conduct continue.

In December 1998, the Mayor sent a letter to Veit ordering him to perform the following tasks: (1) create a schedule for the police force for the first two quarters of 1999 in order to permit all ongoing safety functions to be operational while allowing Officer Hackert to run the Drug Abuse Resistance Education (D.A.R.E.) program at local schools; (2) prepare an incident and arrest report for December 1998, to be submitted prior to the first January 1999 Borough Council meeting; and (3) prepare a plan for additional "Community Policing" activities to be submitted before the second January 1999 Borough Council meeting. Veit responded by letter indicating that it would be impossible to provide the requested schedule for the first half of 1999 because of a variety of factors that he listed. He further stated that in his more than twenty-five years of service he had never made a schedule on six-month basis, but only on a month-to-month basis because of availability of personnel, emergencies, etc. He also indicated that he did not believe that the police force had the personnel (at the time, four full-time officers, including Veit, and two new part-time officers) to conduct any activities other than public safety functions. The Commission found, however, that Veit never supplied the Mayor with the requested incident report information or information regarding scheduling for the D.A.R.E. program or community policing.

---

1. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§ 45101–48501.

On January 5, 1999, the Borough solicitor sent a letter to Barry Miller, Esquire confirming a telephone conversation in which Mr. Miller stated that he represented Veit "in matters unrelated to the negotiation of a new collective bargaining agreement." Commission's Finding of Fact No. 68. The Borough solicitor requested that Mr. Miller contact him if this information did not reflect their conversation. Mr. Miller did not reply to this letter or contradict the "understanding" set forth therein.

On January 7, 1999, the Mayor corresponded with Veit regarding notification of vacation and sick time, particularly regarding any health matters that would affect Veit's ability to carry out his duties. Veit responded by letter dated January 7, 1999, stating that he expected to be out of work for a few months, namely February and March 1999, because of a surgical procedure and his recovery therefrom.[2] He stated that he would keep the Mayor informed of his progress. On January 21, 1999, the Mayor wrote Veit that because Veit had not requested vacation time, his time off from work would be counted as sick leave. The Mayor also cited the collective bargaining agreement and Borough Code to remind Veit that after he is out for two days on sick leave, the Borough "will" have a physician examine him and his medical records to determine whether his condition prevents him from performing his duties. Further, the Mayor reminded Veit that he was required to pass annual physical and other examinations. The Mayor did not receive a response to this letter nor did he receive any other contact from Veit regarding his sick leave from January 21, 1999 until March 19, 1999.

On March 10, 1999, the Mayor sent a letter to Veit informing him that the Borough would be requesting him to undergo an examination by a licensed physician of the Borough's choosing to determine whether Veit was capable of performing his duties. The Mayor also expressed the Borough's desire, however, to forgo the necessity of such an examination by instead merely having Veit's current medical records forwarded to the Borough's physician. The Mayor advised Veit that if he did not agree to this alternative or if the Mayor did not hear from Veit within five days of receipt of the letter, he would schedule an examination by the Borough's physician. On March 19, 1999, Veit replied by letter stating that although he acknowledged receipt of the March 10 letter, counsel for the police regarding a new collective bargaining agreement had advised him that "all doctor appointments are to be postponed until resolution of the outstanding legal issues." Commission's Finding of Fact No. 84.

On March 27, 1999, the Mayor wrote Veit another letter stating that there were no ambiguities to resolve concerning the Borough's request that Veit submit to an examination regarding Veit's then-current sick leave, that he would not tolerate any more "stalling" regarding his March 10 order, that if Veit did not either submit his records to the physician or submit to an examination by April 2, 1999 his sick leave would be terminated, and that Veit would not be returned to active duty until both his physician and the Borough's physician pronounced him fit. On April 8, 1999, the Borough solicitor wrote to Veit's attorney, indicating that Veit's refusal to obey the Mayor's directives in the March 27 letter left the Borough with no alternative but to suspend Veit's sick pay effec-

2. Although Veit did not identify the surgical procedure or its cause in his letter to the Mayor, the record indicates that Veit had a full left knee replacement surgery.

tive 5:00 p.m., April 9, 1999. The solicitor further advised that Veit's continued refusal to submit to an examination or submit his medical records could lead to disciplinary action.

Instead of submitting his medical records or agreeing to a physical examination, Veit submitted, on April 9, 1999, a form with the stamped signature of Dr. Rhodes, a physician who was not the selected physician of the Borough, indicating generally that Veit would be able to perform "his occupational duties, or return to school." The Mayor replied by letter that Dr. Rhode's "release" was wholly unsatisfactory to justify Veit's continued sick leave or a return to work, and the Mayor advised that Veit's sick pay would be terminated as of 5:00 p.m., April 9, 1999. The Mayor again warned of disciplinary action, but also agreed to accommodate Veit by allowing Veit to submit a letter from his physician detailing the nature of the physical incapacity that necessitated Veit's absence from work.

On April 12, 1999, Dr. Rhodes did author a letter addressed "To Whom It May Concern" regarding Veit's knee replacement. The Borough solicitor then wrote a letter to Veit's attorney confirming their agreement that Veit would instruct his orthopedic surgeon to forward all records regarding this surgery to Dr. Lucca by April 19, 1999, for the sole purpose of Dr. Lucca's examination of the records to determine whether Veit's sick leave is justified. The records were not forwarded to Dr. Lucca. On May 13, 1999, the Mayor wrote a letter to Veit advising him that all of his sick time and personal time had been exhausted and that he was ordered to return to work on May 17, 1999, at which time he would be placed on administrative leave until he submitted to a physical examination. The Borough would schedule such examination during the week of May

17, 1999. The Mayor further advised that if Veit passed the physical, he would be returned to active duty, but if the examination revealed that he could not perform his duties, he would be given an honorable discharge from service. By subsequent correspondence, Veit was ordered to attend a physical examination with Dr. Kravitz on May 18, 1999.

On May 17, 1999, Veit's attorney notified the Borough solicitor that he saw no reason for Veit to attend this examination since Veit "has fulfilled all of his obligations." Commission's Finding of Fact No. 102. Veit's attorney did advise, however, that he instructed Veit to attend the examination "to avoid needless litigation," but insisted that the results of the examination be kept confidential and sent only to Veit and his attorney, who would then share them with the Mayor. *Id.* When Veit arrived for the examination, he demanded that the authorization for release of records be modified to reflect only that the results of the examination be sent to a person "associated" with the Borough to be later designated by Veit.

On May 24, 1999, the Borough solicitor wrote to Veit's attorney stating that Veit must sign and return an enclosed release of medical records regarding his physical examination by May 25, 1999 or face disciplinary action for disobedience of a direct order from the Mayor, noting that Veit had already violated the Mayor's order to cooperate with his physical examination, that the Mayor would no longer tolerate Veit's "delaying tactics," and that refusal to obey this latest order may result in termination. The Mayor never received an executed unaltered release and never received the records of Dr. Kravitz's examination. Veit's attorney did reply on May 25, 1999, however, by letter indicating that Veit chose Councilman Goodhart to be the recipient of the records of Dr. Kravitz's

examination. On May 26, 1999, the Borough solicitor replied by letter stating that Veit had disobeyed a direct order from the Mayor and will receive correspondence from the Mayor suspending Veit without pay.

On May 27, 1999, the Mayor forwarded correspondence to Veit suspending him without pay for repeated disobedience of orders and for neglect of duty. The letter set forth four separate instances where Veit disobeyed direct orders from the Mayor, and it advised Veit that he would remain suspended until the next regularly scheduled meeting of the Borough Council on June 8, 1999. The letter further stated that at the time of the Borough Council meeting, or thereafter, the Borough Council may suspend, discharge, reduce in rank, or reinstate Veit. Veit's attorney received a copy of the suspension notice.

On June 4, 1999, Veit's attorney sent "formal notice" to the Commission that Veit was appealing his suspension, copying such notice to the Borough Council and the Mayor. On June 8, 1999, the Borough conducted a duly-advertised public meeting of the Borough Council. Veit and his attorney attended the meeting with the knowledge that the Borough Council would consider Veit's suspension. Neither Veit nor his attorney chose to address the Borough Council at this meeting. After conducting a meeting in executive session, the Borough Council, during the public session, entertained a motion to suspend Veit with the intention of terminating him for the reasons set forth in the Mayor's May 27, 1999 letter. The motion passed unanimously. By letter dated June 9, 1999, the Borough solicitor wrote to Veit advising him that the Borough Council had voted to discharge him for his repeated disobedience of orders, specifying the four instances noted by the Mayor in his May 27 letter.

Hearings were held before the Commission from October 20, 1999 until September 27, 2000. After making the above findings of fact, the Commission concluded that Veit's suspension and dismissal were justified because of his disregard and refusal of direct orders from his immediate supervisor, the Mayor, regarding: (1) Veit's sick leave request and failure to comply with Borough directives as set forth in the applicable collective bargaining agreement; (2) the failure to submit medical records in a timely manner in order to justify his sick leave as set forth in the collective bargaining agreement and Borough regulations; (3) the failure to submit to a physical examination as required by the collective bargaining agreement and Borough regulations; (4) the failure to release the results of Dr. Kravitz's physical examination; (5) the failure to supply requested community policing information; (6) and the failure to supply requested D.A.R.E. program and other scheduling information. The Commission determined that Veit's repeated disobedience of orders and instances of conduct unbecoming an officer justified his termination as the only reasonable discipline available to the Borough.

The Commission also denied a motion by Veit for reinstatement in which he alleged that he had been deprived of his due process right to a pre-termination or pre-suspension hearing. The Commission found that the Borough had provided adequate notice and opportunity to be heard prior to termination that satisfied his due process rights. The Commission further found that Veit, through his counsel, waived any constitutional challenge by requesting a Commission hearing after his suspension but before the Borough Council took action on the Mayor's suspension. Veit appealed the Commission's decision to

the trial court, which did not take additional evidence.

The trial court made its own findings of fact, however. Those findings focused on Veit's argument that he was denied his due process rights because he was not afforded a pre-termination hearing. The trial court agreed with this argument, making the finding that Veit was never given a date, time, or place to respond to the Borough's allegations, nor informed of his right to be heard prior to termination. Further, the trial court found that Veit was never addressed at the June 8, 1999 Borough Council meeting or given an opportunity to respond to the allegations at that time. The trial court did not, however, discuss or acknowledge the findings regarding this issue made by the Commission.

The trial court concluded that Appellant's due process rights had been violated, noting that Appellant had a constitutional right to a pre-termination hearing pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Because it found that Veit was discharged by the Borough without any opportunity for a prior hearing, the trial court granted Veit's appeal and remanded the matter to the Borough to conduct a pre-termination hearing. The trial court did not fully reinstate Veit, however, but restored his status as of May 26, 1999 when he was suspended without pay. These cross-appeals followed.

Veit argues (1) that the Borough violated Veit's due process rights not only by failing to provide a hearing prior to termination, but also by failing to provide a hearing prior to suspension since the suspension resulted in a loss of pay, and (2) that Veit should have been reinstated with full back pay and interest, cost of benefits,

and attorney's fees as a result of the trial court's conclusion that his rights had been violated under the Fifth and Fourteenth Amendments to the United States Constitution. The Borough argues (1) that the trial court erred by failing to defer to the Commission's findings of fact when it did not take any evidence of its own on Veit's due process argument, particularly when Veit had allegedly waived a request to have a pre-termination hearing, and (2), in the alternative, that the trial court correctly determined that Appellant was not entitled to reinstatement to his pre-suspension status.

■ We first note that the trial court improperly drew its own findings of fact. Where the trial court took no additional evidence because a complete record was developed before the agency, appellate review of a municipal civil service commission adjudication is limited to determining whether constitutional rights have been violated, an error of law has been committed, or findings of fact necessary to support the adjudication are not supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b); *Lewis v. Civil Service Commission, City of Philadelphia*, 518 Pa. 170, 542 A.2d 519 (1988). Here, a complete record was made before the Commission. Therefore, the issue before us, as it should have been with the trial court, was whether, under the facts found by the Commission, Veit suffered a deprivation of his constitutional rights because he did not have a pre-termination hearing.[3]

■ The United States Supreme Court held that an essential principle of due process is that a deprivation of life, liberty, or property must "be preceded by

---

**3.** The trial court did not determine that any relevant and necessary fact found by the Commission was not supported by substantial evidence. In this appeal, neither Veit nor the Borough challenges the Commission's findings of fact.

notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Government employees who are entitled to retain their positions unless dismissed for cause have a property interest protected by due process considerations. *Cleveland Board of Education.* The Commission and the trial court therefore correctly concluded that such due process concerns protected Veit. The issue that arises from this conclusion is what process was required to protect Veit's rights. *See id.*

Because of the severity of depriving a person of his or her livelihood, the Supreme Court determined that "some form of pretermination hearing" is "need[ed]" even when a full post-termination hearing is available to the discharged public employee. *Id.,* 470 U.S. at 542, 105 S.Ct. 1487. The formality and procedural requisites of this pre-termination "hearing" can vary depending on the surrounding circumstances. *Id.* A full evidentiary hearing is not required, nor must the pre-termination hearing resolve the propriety of the discharge. *Id.* Essentially, due process is satisfied at the pre-termination stage, where (1) a post-termination hearing is available to the employee, (2) the employee receives oral or written notice of the reasons for (eventual) dismissal with explanation of the employer's evidence, and (3) the employee is given an opportunity to present his or her side of the story. *Id.* The purpose of the pre-termination process is simply to provide an initial check against mistaken decisions, where an employee, for example, may demonstrate prior to discharge that the employer's information regarding the cause for dismissal is erroneous. *Id.; Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).

Further, in determining what process is due, a court must balance the private interest involved, the risk of an erroneous deprivation of that interest through the procedures used and the probable value of any additional procedural safeguards, and the government's interest. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The relative balances may, when weighed, actually support the conclusion that *no* pre-termination hearing is required. *Gilbert.* In *Gilbert,* the Supreme Court determined that pre-suspension procedures, where there is a timely post-suspension hearing, do not carry the gravity of pre-termination procedures because there would be an ample opportunity to correct any mistakes during the post-suspension process. Thus, Veit's argument that the trial court erred by not ordering a pre-suspension hearing rather than a pre-termination hearing is not supported by the Supreme Court's case law. Moreover, *pre-termination* proceedings may be satisfied simply by providing the employee the opportunity to present an oral or written refutation of the stated grounds for dismissal. *Cleveland Board of Education. See also Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

It must also be emphasized that due process is a "flexible" concept, not a technical one, and that it imposes only such procedural safeguards as the situation warrants. *Gilbert.* Further, it must be recognized that due process is a right that a party may waive. *Adams v. Lawrence Township Board of Supervisors,* 153 Pa.Cmwlth. 418, 621 A.2d 1119, *petition for allowance of appeal denied,* 536 Pa. 631, 637 A.2d 291 (1993).

Here, there is no question that Veit received written notification of the reasons for his suspension and ultimate termination. Although Veit correctly states

that this written notification did not advise him of a right to a pre-termination hearing or the right to counsel, Veit's argument that he was deprived of his due process rights is unpersuasive under the surrounding circumstances. First, the May 27, 1999 letter informed Veit that the issue of his suspension and possible termination would be brought up at the next Borough Council meeting on June 8, 1999. Veit was already represented by counsel, who had been actively engaged in correspondence with the Borough solicitor on the ultimate issue that led to Veit's suspension and termination. Veit and his attorney attended the June 8, 1999 Borough Council meeting where the issue of Veit's suspension and termination was addressed. Prior to this meeting, Veit's attorney formally appealed the suspension to the Commission.

In light of these facts, it is difficult to accept the claim that Veit did not have an *opportunity* prior to his termination to tell his side of the story, either during the two weeks before the June 8, 1999 Borough Council meeting, through a written refutation of the charges addressed to the Borough Council, or at the Borough Council meeting itself.[4] While the record does not indicate that Veit was given a formal invitation to tell his side of the story prior to termination, neither does it give any evidence that Veit or his attorney was prohibited from initiating a defense if the charges lodged were based on mistaken information. More pointedly, it is an unpersuasive argument to state that an employee was unconstitutionally deprived of the opportunity for a pre-termination hearing when the employee and his attorney (1) attended the very meeting before the neutral body having authority that considered the issue of the employee's possible termination, (2) had foreknowledge that the issue of the employee's termination would be raised and considered at that meeting, and (3) failed to raise any allegation that they were prohibited from speaking or presenting evidence or argument at that hearing. In short, Veit and his attorney could not sit on their hands throughout this proceeding and then at a *later* point argue that Veit was deprived of the opportunity to have a pre-termination hearing. At the very least, Veit waived his due process argument by not raising it before the Borough Council, instead waiting until the Commission heard his appeal. *See Adams* (an employee waives a due process claim of being deprived of a hearing when he or she, while represented by counsel, voluntarily relinquishes a right to a hearing).

We therefore conclude that the Commission did not err or deprive Veit of his constitutional rights by denying Veit's motion for reinstatement and a pre-termination hearing. The record establishes that Veit had a sufficient opportunity to respond to the charges made against him by the Mayor, that he failed to avail himself of that opportunity, and that he waived his due process argument by not making a timely request for a pre-termination hearing, although represented by counsel at every relevant stage of the proceedings.

Accordingly, we reverse the order of the trial court and remand this case to the trial court for further disposition on Veit's remaining challenges to the Commission's adjudication.

---

4. A period of three weeks from notice of charges to the agency meeting where termination or other discipline would be decided, on its own, was "adequate as a matter of law" for the employee to make an appropriate pre-termination response. *McDaniels v. Flick*, 59 F.3d 446, 456 (3rd Cir.1995), *cert. denied*, 516 U.S. 1146, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996).

## ORDER

AND NOW, this 12th day of June, 2002, the order of the Court of Common Pleas of Montgomery County (trial court) in the above-captioned matter is hereby reversed, and this matter is remanded to the trial court for disposition on the remaining issues raised by Kenneth Veit in his appeal to the trial court from the decision of the North Wales Civil Service Commission.

Jurisdiction relinquished.