# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lawrence Hanna, : 
                  Appellant : 
                   : 
                   : 
           v. :    No. 1155 C.D. 2023
                   : 
Upper Pottsgrove Township :    Submitted: September 9, 2024

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION BY
JUDGE WOLF                                  FILED: August 8, 2025

Lawrence Hanna (Appellant) appeals a September 22, 2023 order of the Court of Common Pleas of Montgomery County (trial court) that affirmed the decision of the Civil Service Commission of Upper Pottsgrove Township (Commission) upholding the termination of Appellant's employment from the Upper Pottsgrove Township (Township) police department on the basis of misconduct. Appellant argues that his employment was terminated without sufficient notice or opportunity to respond to the allegations against him, as required under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).[1] Because the Township provided Appellant adequate notice and an opportunity to respond before terminating his employment in compliance with *Loudermill* and relevant precedent, we affirm.

---

[1] In *Loudermill*, the United States Supreme Court held that a public employee who is targeted for dismissal holds a property interest in his employment and is thereby "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 470 U.S. at 546.

## I.  Factual Background

The underlying facts are not in dispute.  At the time of his termination, Appellant was a 20-year veteran officer of the Township's police department. Commission Decision, Finding of Fact (F.F.) No. 11.[2]  On the evening of September 17, 2021, Appellant encountered two teenage women who were riding in a motor vehicle in a Township park.  *Id.*, F.F. No. 10.  During the stop, which lasted for approximately 90 minutes, Appellant offered the young women help in the event of any future encounters with Township police.  *Id.*, F.F. No. 11.  Later that night, in the early morning of September 18, 2021, Appellant conducted another traffic stop of one of the young women, Miranda Curtiss, citing a loud exhaust.  *Id.*, F.F. No. 12.  Contravening departmental rules, Appellant did not issue a citation or warning for the purported offense, report the stop on the county radio system, create a written report, or record it in his daily log.  *Id.*, F.F. No. 13.  At the time, Ms. Curtiss was 19 years old and living with her mother.  *Id.*, F.F. Nos. 4, 18.  In the days following the initial traffic stops, Appellant began contacting Ms. Curtiss via text message, including an offer to give her a ride in his personal vehicle.  *Id.*, F.F. No. 18.

On September 19, 2021, Douglass Township Police Officer Gregory Sedgwick pulled Ms. Curtiss over for speeding.  *Id.*, F.F. No. 19.  Recalling Appellant's offer of help, Ms. Curtiss telephoned Appellant later that evening to ask for help in handling the speeding citation.  *Id.*, F.F. No. 20.  Appellant then called Officer Sedgwick that evening to ask for lenient treatment of Ms. Curtiss.  *Id.*, F.F. No. 21.  Afterward, Appellant asked Ms. Curtiss to meet with him in person, and the

---

[2] The Commission's Decision may be found at pages 547-574 of the Reproduced Record.  We note that the Reproduced Record does not comport with Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 (requiring that the pagination of reproduced records be in the form of an Arabic number followed by a small "a").  The Court will refer to the pages in the Reproduced Record as they are numbered by Appellant.

2

two agreed to meet at a nearby Wawa for a brief discussion. *Id.*, F.F. No. 22. After leaving, Appellant asked Ms. Curtiss for yet another in-person meeting later that night. *Id.*, F.F. No. 23. Appellant suggested going for a ride with him at 1:00 a.m. in his personal vehicle after he got off work. *Id.* Uninterested, Ms. Curtiss proposed instead that she bring a friend along to meet Appellant at an agreed-upon location, to which Appellant responded with disappointment. *Id.*, F.F. No. 24. Appellant initially proposed that they meet at the Township police station but, citing his concern that there were too many cameras there, changed the meeting's location to Royal Customs, an automotive business owned by his friend. *Id.*, F.F. No. 24; *see also* Reproduced Record (R.R.) at 447. It is not apparent from the record what, if anything, transpired at that meeting. Over the next few days, Appellant sent text messages to Ms. Curtiss that were increasingly sexual in character, such as his suggestion that Ms. Curtiss would benefit from having a "sugar daddy." Commission Decision, F.F. No. 25. Appellant also gave Ms. Curtiss his personal mobile phone number, in spite of his receipt of a prior disciplinary action admonishing him not to share that number in matters related to police work. *Id.*, F.F. No. 26.

In late September 2021, Appellant notified Ms. Curtiss that he could help secure a job for her at Royal Customs. *Id.*, F.F. No. 27. Shortly before her job interview, Appellant sent her a text message advising her to wear pants that would show off her "amazing ass." *Id.* After making numerous inquiries into Ms. Curtiss's private life, Appellant began to complain that her mother was overly protective. *Id.*, F.F. No. 29. Referring to her derisively as "the warden," Appellant compared Ms. Curtiss's mother's behavior to that of abusive parents whom he had investigated as part of his work. *Id.*, F.F. Nos. 29-30. Appellant advised Ms. Curtiss to "cut the

3

cord," as her mother's purportedly controlling behavior made it difficult for Ms. Curtiss to "go on dates" or "make out." *Id.*, F.F. Nos. 30-31. Ms. Curtiss also responded to Appellant's entreaties about her love life by recounting a recent breakup with a boyfriend, whom Appellant referred to as "a piece of shit." *Id.*, F.F. No. 32. Appellant asked Ms. Curtiss for the ex-boyfriend's personal information so that Appellant could "look him up." *Id.*

After Ms. Curtiss was hired at Royal Customs, Appellant asked via text message for another in-person meeting. *Id.*, F.F. No. 33. Ms. Curtiss did not respond directly but indicated that she was upset at the time about a boy. *Id.* Appellant responded that he would have been "happy to help" by offering "grudge sex to get over the boy." *Id.*; *see also* Original Record (O.R.) at 1157.[3] Ms. Curtiss again did not respond directly but mentioned that she was to begin work at Royal Customs the following day; Appellant replied: "[a]nd u owe it all to me." Commission Decision, F.F. No. 33; O.R. at 1157. Ms. Curtiss did not respond to that message, either, and when Appellant attempted to meet her at Royal Customs a few days later, Ms. Curtiss avoided him by running upstairs. *Id.*, F.F. No. 36.

By happenstance, Ms. Curtiss engaged in conversation with Ryan Sloan, another Township police officer, while at work the next day and expressed concerns about Appellant's behavior. *Id.*, F.F. No. 37. Officer Sloan relayed those concerns to James Fisher, the Township's Chief of Police, who began an investigation into the matter. *Id.* While that investigation was underway, Ms. Curtiss attended a traffic hearing in Douglass Township about her September 19, 2021 speeding citation. *Id.*, F.F. No. 38. There, Ms. Curtiss again voiced her concerns about Appellant's behavior to Officer Sedgwick, adding that she was reluctant to ask for help because

---

[3] For convenience, the citation to the Original Record reflects electronic PDF pagination.

she did not want to "owe" Officer Sedgwick in the same way that she felt indebted toward Appellant. *Id.*, F.F. No. 39. Ms. Curtiss also showed Officer Sedgwick some of the text messages that she had received from Appellant, which Officer Sedgwick promptly reported to Douglass Township Police Chief Barry Templin. *Id.*, F.F. No. 40. Chief Templin immediately relayed the information to Chief Fisher, who initiated another investigation. *Id.*

On December 17, 2021, Chief Fisher and Corporal Albert Werner, also of the Township's Police Department, interviewed Ms. Curtiss and found her responses to be credible and consistent. *Id.*, F.F. No. 42. After Ms. Curtiss consented to Corporal Werner's review of the relevant text messages, Corporal Werner observed that Ms. Curtiss "never responded to [Appellant's] messages in a sexual manner" and that the sexual character of the messages was entirely "one-sided." *Id.* In later testimony, Corporal Werner recalled his surprise upon meeting Ms. Curtiss that she was 19 years old, since his impression was of someone far more "young and immature." *Id.*

## II. Procedural Background

On January 10, 2022, Chief Fisher and Corporal Werner conducted an interview of Appellant. *Id.*, F.F. No. 45. Before the interview began, Corporal Werner handed Appellant a *Garrity* warning[4] as well as a *Weingarten* form,[5] both of

---

[4] A *Garrity* warning (after *Garrity v. New Jersey*, 385 U.S. 493 (U.S. 1967)) is given to a police officer who is the subject of an internal investigation to inform him that his answers will not be used in any criminal prosecution, while also warning him that the refusal to answer questions may be grounds for termination. *Pa. State Troopers Ass'n v. Pa. Labor Rels. Bd.*, 71 A.3d 422, 425 n.5 (Pa. Cmwlth. 2013).

[5] In *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 260 (1975), the United States Supreme Court held that, under federal law, a union employee enjoys the right to be joined by a union representative during an investigatory interview. As the Pennsylvania Supreme Court has observed, "[t]his right of accompaniment is now commonly known as an employee's *Weingarten* right." *Off. of Admin. v. Pa. Lab. Rels. Bd.*, 916 A.2d 541, 546 (Pa. 2007).

5

which Appellant signed and dated. *Id.*, F.F. Nos. 46-47. Corporal Werner then showed Appellant a form bearing the heading "Official Notice of Internal Investigation," which informed Appellant as follows: "[a] formal complaint of misconduct has been filed against you, and you are the subject of an internal investigation." Appellant's Br., App. A, Rule 1925(a) Op. at 6. Below, the form listed the full name of Ms. Curtiss and outlined the specific complaints of misconduct that she had made. *Id.* During the interview, Appellant strenuously denied writing some of the text messages that he had sent to Ms. Curtiss even after Corporal Werner quoted directly from them. Commission Decision, F.F. No. 50.

Subsequently, the Township held a *Loudermill* hearing, at which Chief Fisher explained that Appellant was being charged with violations of the department's code of conduct. Rule 1925(a) Op. at 7. Appellant was informed that Chief Fisher considered the investigation "serious," and that he was entitled to legal counsel, which Appellant waived. *Id.* Chief Fisher also explained to Appellant that he was permitted, but not required, to provide any additional information or "any mitigating factors that might affect [Chief Fisher's] decision whether to make it a founded investigation." *Id.* Following the *Loudermill* hearing, Appellant provided the Township with a written response via e-mail. *Id.* Therein, Appellant acknowledged the *Loudermill* hearing but denied responsibility for the conduct alleged, and did not attempt to address the inconsistencies in his previous interview answers. Commission Decision, F.F. No. 54. On February 9, 2022, the Township terminated Appellant's employment. *Id.*, F.F. No. 55 (misnumbered in original as F.F. No. 54).

Appellant appealed to the Commission, which held three evidentiary hearings on April 14, 2022; April 27, 2022; and May 19, 2022. *Id.*, F.F. No. 8. The Commission heard the testimony of Ms. Curtiss, Appellant, Chief Fisher, Corporal

6

Werner, and Officer Sloan, as well as several character witnesses appearing on Appellant's behalf. R.R. at 29, 176, 357. The Township also presented the deposition testimony of Officer Sedgwick, taken on June 17, 2022. O.R. at 1012.

On November 8, 2022, the Commission issued a decision upholding the termination of Appellant's employment. Commission Decision at 27-28. The Commission found that the Township introduced substantial, competent, and convincing evidence that Appellant engaged in numerous acts of misconduct, which the Commission divided into three categories: "grossly inappropriate sexual communication with a teenager"; failing "to report or document a traffic stop or take appropriate enforcement action pursuant to a traffic stop"; and providing "false and misleading information during the course of an internal investigation." *Id.* at 18-27. Regarding the witnesses' credibility, the Commission credited Ms. Curtiss's testimony over Appellant's where in conflict, and "appreciate[d]" the character witnesses' testimony but declined to assign it any evidentiary importance. *Id.* at 16-17, Conclusions of Law (C.L.) Nos. 3-4. The Commission concluded that the Township's termination of Appellant's employment "was justified by the evidentiary record, and was not arbitrary, discriminatory, or an abuse of discretion." *Id.* at 18, C.L. No. 12.

Appellant filed a timely appeal of the Commission's decision with the trial court on December 6, 2022. Rule 1925(a) Op.[6] at 7. The trial court held argument regarding the appeal on August 17, 2023, but took no additional evidence. *Id.* at 7-8. In a September 22, 2023 order, the trial court affirmed the Commission's

---

[6] Rule 1925(a) provides that, upon the receipt of a notice of appeal, "the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall . . . file of record at least a brief opinion of the reasons for the order." Pa.R.A.P. 1925(a).

decision. Appellant's Br., App. A, Order. Following Appellant's appeal to this Court, the trial court directed him to file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).[7] Rule 1925(a) Op. at 8. In response, Appellant framed the issue on appeal as follows:

> Whether [Appellant's] constitutional rights under *Loudermill* were violated[,] thereby depriving [him] of the ability to fully understand the allegations raised against him, as well as the inability for [him] to enter a proper defense to the allegations when he was terminated from his employment as a police officer [with the Township]?

*Id.*

In its Rule 1925(a) opinion, the trial court opined that Appellant was properly provided a hearing that "(1) notified him of the complaint against him" and "(2) provided him with an opportunity to respond to the complaint prior to his termination." *Id.* at 11. Requiring "anything further from the [Township] prior to Appellant's termination 'would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.'" *Id.* at 10 (citing *Loudermill*, 470 U.S. at 546). The trial court distinguished the instant matter from *Loudermill* by reasoning that the public employees in that case "had **no notice or opportunity to respond prior to their termination**." *Id.* at 10-11 (emphasis in original). Appellant, by contrast, was shown a form bearing the heading "Official Notice of Internal Investigation," which informed him of the allegations and evidence against him, and which he signed and dated. *Id.* at 10. Moreover, the trial court noted that "Chief Fisher . . . gave Appellant an opportunity to provide him with any additional information or mitigating factors," and that Appellant indeed

---

[7] Rule 1925(b) provides that, upon receipt of a notice of appeal, the trial court may order an appellant to file of record a concise statement of errors complained of on appeal. Pa.R.A.P. 1925(b).

provided a written response on January 16, 2022. *Id.* The trial court acknowledged that "Appellant was not notified of the specific provisions of the [Township's] Code of Conduct that he was alleged to have violated," but rejected the notion that the omission rendered the proceedings legally infirm. *Id.* At any rate, the trial court noted, "Appellant availed himself of a post-termination appeal, and, pursuant thereto, the Commission conducted thorough hearings." *Id.* at 11.

## III. Issues

On appeal to this Court, Appellant maintains that he "was never provided with the ability to prepare an adequate defense and was never properly advised of the reasons for his termination, which is a violation of [his] *Loudermill* rights." Appellant's Br. at 8.

## IV. Discussion

Due process requires that, prior to the deprivation of a property interest, such as that which a civil service employee has in his or her employment, an employee must have notice and an opportunity to be heard. *Loudermill*, 470 U.S. at 542. A civil service employee's opportunity to be heard prior to the termination of a civil service employee's employment "need not be elaborate." *Id*. at 545. "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id*. The pre-termination hearing serves as "an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id*. at 545-46. Notice of the charges is sufficient if (1) it apprises the vulnerable party of the nature of the charges and general evidence against him, and (2) it is timely under the particular circumstances of the case.

9

*Antonini v. Western Beaver Area Sch. Dist.*, 874 A.2d 679, 686 (quoting *Gniotek v. City of Phila.*, 808 F.2d 241, 244 (3d Cir. 1986)).

Instantly, Appellant argues that Chief Fisher's and Corporal Werner's warnings during the January 10, 2022 interview and later *Loudermill* hearing amounted to little more than "ambiguous references" to an investigation and therefore constituted insufficient notice under *Loudermill*. Appellant's Br. at 22. Appellant compares the investigation in this matter to the one at issue in *Ray v. Civil Service Commission of Borough of Darby*, 131 A.3d 1012 (Pa. Cmwlth. 2016). In *Ray*, a fired police officer argued that a written correspondence warning him of "disciplinary action that could affect [his] pay" was insufficient to put him on notice that the employer was considering the termination of his employment. *Id.* at 1020. The officer further argued that he was incapable of mounting an adequate defense without a statement of specific charges against him. *Id.* at 1021. Although this Court ordered the reinstatement of the fired officer on other grounds, we rejected his argument of insufficient notice, explaining that the process "complied with pre-termination due process requirements, because [the officer] was informed of the charges against him and provided with an opportunity to respond to those charges." *Id.* at 1020. In Appellant's view, *Ray* stands for the proposition that "notice is sufficient" if it states that "an officer 'may be subject to disciplinary action that could affect [his] pay.'" Appellant's Br. at 24-25 (citing *Ray*, 131 A.3d at 1020). Here, Appellant argues he did not receive a written statement of charges or any notice that he could be disciplined in a way that would affect his pay, no less terminated.

We reject Appellant's argument, as it relies on a misstatement of our holding in *Ray*. Although the notice given to the officer in that case did clarify that the disciplinary action could have adverse consequences on his pay, we see nothing in

10

our opinion establishing a bright-line rule that notice must include an express reference to pay in order to comply with *Loudermill* and its progeny. To the contrary, we explained in *Ray* that "the pre-termination hearing serves as 'an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true.'" 131 A.3d 1012, 1020 (quoting *Loudermill*, 470 U.S. at 545-46).

Moreover, we note that there is no requirement that an employer provide specific charges to an officer during the pre-termination process. *See Schmidt v. Creedon*, 639 F.3d 587, 599-600 (3d. Cir. 2011). In *Schmidt*, the Third Circuit discussed the adequacy of notice provided to police officers in pre-disciplinary hearings. Citing *Copeland v. Philadelphia Police Department*, 840 F.2d 1139 (3d Cir. 1988) and *Gniotek*, 808 F.2d at 241, the Court explained that a notice sufficiently detailing the conduct at issue satisfies *Loudermill*'s notice requirement. *Schmidt*, 639 F.3d at 599-600. In so holding, the Third Circuit specifically rejected the officer's argument that his notice was legally infirm because it did not identify the specific rules of conduct that he allegedly violated. Here, Appellant received an "Official Notice of Internal Investigation" that stated a formal complaint of misconduct was filed against him, citing Ms. Curtiss as the complainant and describing the gross misconduct alleged. *See* O.R. at 1086. In accordance with *Schmidt*, *Copeland*, and *Gniotek*, this sufficiently put Appellant on notice of the conduct at issue and thus satisfied *Loudermill's* notice requirement.

To the extent the potential for termination was not specifically noticed to Appellant, we agree with the trial court that "Appellant availed himself of a post-termination appeal" where he was made fully aware of the investigation's consequences and, with the assistance of counsel, had a thorough opportunity to

refute the allegations against him. Rule 1925(a) Op. at 11. This Court has explained that when there is a timely post-deprivation hearing, the pre-deprivation procedures do not carry the same "gravity . . . because there would be an ample opportunity to correct any mistakes" during the post-deprivation process. *Veit v. N. Wales Borough*, 800 A.2d 391, 398 (Pa. Cmwlth. 2002);[8] *see also McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995) (rejecting a claim that due process has been denied where the discharged employee "has not taken advantage of his right to a post-deprivation hearing before an impartial tribunal that can rectify any possible wrong committed by the initial decisionmaker"). For these reasons, the trial court properly upheld the termination action.

## V. Conclusion

Discerning no error, we affirm the trial court's September 22, 2023 order.

_____
MATTHEW S. WOLF, Judge

---

[8] In *Veit*, this Court went a step further, concluding that under certain factual circumstances, a proper weighing of the private and public interests at stake "actually support[s] the conclusion that *no* pre-termination hearing is required." 800 A.2d at 398 (citing *Gilbert v. Homar*, 520 U.S. 924 (1997)) (emphasis in original).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lawrence Hanna,

        Appellant

        v.

Upper Pottsgrove Township

:
:
:
:
:   No. 1155 C.D. 2023
:
:
:

# **O R D E R**

AND NOW, this 8th day of August 2025, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter, dated September 22, 2023, is hereby AFFIRMED.

 

              _____

              MATTHEW S. WOLF, Judge