Agnes H. Lewis, Petitioner *v.* Commonwealth of Pennsylvania, Department of Health and State Civil Service Commission, Respondents.

Argued September 18, 1981, before Judges BLATT, CRAIG and MacPHAIL, sitting as a panel of three.

*Robert W. Barton, Killian & Gephart,* for petitioner.

*Christine S. Dutton,* Assistant Counsel, for respondent, Department of Health.

*Barbara G. Raup,* Chief Counsel, for respondent, State Civil Service Commission.

OPINION BY JUDGE BLATT, December 14, 1981:

The petitioner, Agnes H. Lewis, appeals a decision of the State Civil Service Commission (Commission) upholding an action of the Department of Health (Department) removing her from her position as District

Nurse Administrator and Public Health Nurse IV with regular civil service status. The removal was based on the charge that she falsely claimed hotel stays.

Because Ms. Lewis was a regular status civil service employee, her removal from the classified service is required to have been for "just cause" under Section 807 of the Civil Service Act (Act).[1] Upon removal, she became entitled to a hearing[2] before the Commission to determine whether or not just cause existed and, at such a hearing held on May 22, 1979, the Department alleged that on four separate instances[3] Lewis had allowed her supervisor, Robert J. Slocum, to use her state hotel orders for his personal use. On March 27, 1980, the Commission upheld her removal largely upon the basis of (1) the unlikely sequence of events testified to by her, and (2) upon an admission which she was alleged to have made to her secretary.

We have recognized that our scope of review of a just cause adjudication by the Commission, where, as here, the party with the burden of proof[4] has prevailed below, is limited to a determination of whether or not constitutional rights were violated, an error of law was committed, or a necessary finding of fact was unsupported by substantial evidence. *D'amato v. Department of General Services*, 58 Pa. Commonwealth Ct.

[1] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.807.

[2] Section 951 of the Civil Service Act, added by Act of August 27, 1963, P.L. 1257, *as amended*, 71 P.S. §741.951.

[3] The dates and places involved are as follows: June 12-13, 1978, Sheraton, State College; August 14-16, 1978, Holiday Inn, State College; September 28-29, 1978, Holiday Inn, State College; and November 16-17, 1978, Penn Wells, Wellsboro.

[4] The appointing authority has the burden of going forward with the evidence to establish a prima facie case justifying its removal of a regular status employee. *See Benjamin v. State Civil Service Commission*, 17 Pa. Commonwealth Ct. 427, 332 A.2d 585 (1975).

489, 427 A.2d 1287 (1981). Moreover, it is well settled that questions of credibility and the weight to be given conflicting[5] evidence are for the Commission, as ultimate factfinder, to decide and are not for this Court. We must, however, examine the record for the purpose of determining whether or not the Commission exercised reasonable discretion in rendering its decision. *Bureau of Employment Security v. Schreider*, 24 Pa. Commonwealth Ct. 297, 355 A.2d 838 (1976).

Ms. Lewis, who was employed by the Commonwealth for approximately 14 years, argues here that the Commission's factual findings, specifically the finding that she had admitted in a conversation with her secretary that she permitted her supervisor to use her hotel order for August 15, 1978, were not supported by substantial evidence.

We have defined "substantial evidence" in just cause cases as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Schreider.* And, of course, substantial evidence is more than a mere scintilla. *Id.* Ms. Lewis and her supervisor testified before the Commission that, in discharging their duties, they were required to travel extensively and that she had previously had trouble in holding reservations because payment was not received in time. She said that, to remedy such situation, her supervisor had proposed that, when his schedule placed him in or near a location where she would soon be arriving, he would deliver her hotel orders to hotels early enough in the day so that her reservations would be honored even if she arrived late. Both sides agree that her position permitted her to stay overnight, and the record reveals that her supervisor actually encour-

---

[5] The existence of conflicting evidence does not mean that there is a lack of substantial evidence in support of the findings. *Barr v. The Pine Township Board of Supervisors*, 20 Pa. Commonwealth Ct. 255, 341 A.2d 581 (1975).

aged her to do so because of her age and poor health at that time due to a recent operation and asthmatic condition.

Our close examination of the record concerning the four instances in which Ms. Lewis is alleged to have falsely claimed hotel stays reveals that the respondents failed to show that she did not stay overnight on three of the four dates concerned. Specifically, the only evidence produced was remote circumstantial evidence gathered and given by a state investigator who testified that, although he was unable to identify who had stayed at the hotels on the dates concerned, he *was able* to verify Lewis' job-related presence in those areas during June 12-13, September 28-29, and on November 16-17 periods of 1978. We cannot say, therefore, that substantial evidence existed upon which the Commission could conclude that Ms. Lewis falsely claimed hotel stays during these three periods above enumerated. *Schreider.*

As to the August 14-16, 1978 period, the Commission found the testimony of Ms. Lewis regarding her actions during this period particularly troubling. She testified that she drove to State College on the night of August 14, stayed overnight there, noticed the next morning that she was having "profuse bleeding" whereupon she started[6] to drive (home) to Sunbury in order to be closer to her doctor, and, as she neared home, her condition improved so she decided to work that day at the Williamsport office and then to return to State College after work so that she might consult with some faculty members there. During the return trip, and as she approached State College, she testified that she began to have problems again and decided not to attempt to meet with the faculty members but rather

---

[6] Lewis testified that she left her clothes in the motel because she hoped her condition was not serious and on that basis she planned to return to State College.

to rest overnight at the State College motel and return the following morning to the Williamsport office because she had appointments all that day there. In addition to finding that Ms. Lewis' name was on state hotel vouchers for the August 14 and 15, 1978 stays and that the aforesaid sequence of events were incredible, the Commission found that she admitted allowing her supervisor to use her hotel orders on the basis of the following testimony of her secretary, Sharon R. Brink:

A.   I said to her that I knew the 15th [of August, 1978,] I had seen her in the office on that date, and was there any possibility of a mistake in the dates. And she said that Mr. Slocum [her supervisor] had told her that Mr. Kcenich would not allow him to stay overnight, and he asked if he could stay overnight on her hotel voucher, and she agreed to it.

Q.   Did she say she had not stayed overnight on those dates in question?

A.   Yes, she did.

Ms. Brink subsequently testified that she told her boss (Ms. Lewis) "[d]on't let it happen again." Ms. Lewis, in denying her secretary's version of the August 15, 1978 conversation, testified that she recalled only Ms. Brink mentioning that Mr. Slocum's printing was on the voucher—which was consistent with her "drop-off" procedure with him—and that, when Ms. Brink told her not to let it happen again, she did not reply because she often discounted Ms. Brink's remarks or otherwise felt it useless to respond.

As in any case where there is conflicting testimony, we believe that the pivotal issue here is reduced to *credibility* which is, of course, within the sole province of the Commission. *Colonial Gardens Nursing Home, Inc. v. Department of Health,* 34 Pa. Commonwealth

Ct. 131, 382 A.2d 1273 (1978). And, although we would have decided differently,[7] we are nevertheless bound by our scope of review to abide by the Commission's decision to reject the testimony of Ms. Lewis and her witnesses and to accept and assign great weight to the testimony of Ms. Brink, which the Commission believed to be credible. *Barr.* Accordingly, we must hold that the "admission" combined with the "unlikely sequence of events" to which Ms. Lewis, herself, testified constituted relevant and substantial evidence which a reasonable mind could find adequate to support the Commission's factual findings as to what transpired during August 14-16 of 1978. *Schreider.* But, in light of our conclusion that only one of the four alleged instances of Ms. Lewis' misconduct as found by the Commission was supported by substantial evidence and inasmuch as the Commission based its affirmance of her dismissal on *all four* instances and has broad discretionary[8] powers in determining what constitutes cause for dismissal, we believe that justice[9] requires us under these circumstances to order a remand to the Commission for reconsideration of wheth-

---

[7] It is a well settled principle of appellate review that the hearing body to whom the testimony is actually presented is in the best position to decide matters of credibility and evidentiary weight due to the ability to observe witnesses firsthand. *See, e.g., Harry v. Eastridge,* 374 Pa. 172, 97 A.2d 350 (1953). We note that the Commission made its decision here some 10 months after such observation.

[8] *See Zeber Appeal,* 398 Pa. 35, 156 A.2d 821 (1959).

[9] Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704 states that if the adjudication [by an agency] is not affirmed, then the court may enter any order authorized by Section 706 of the Judicial Code, 42 Pa. C. S. §706 which provides that:

An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had *as may be just under the circumstances* (emphasis added).

er or not reinstatement with or without[10] back pay rather than removal is warranted here.

### ORDER

AND Now, this 14th day of December, 1981, the order of the State Civil Service Commission in the above-captioned matter sustaining the removal of the petitioner herein is vacated and this case is remanded to said Commission for further proceedings consistent with the foregoing opinion of this Court.

---

[10] We note that neither the Commission nor our Court has authority to order a suspension in lieu of dismissal, that power being reserved by the appointing agency under Section 803 of the Civil Service Act, 71 P.S. §741.803. *See Baron v. Civil Service Commission*, 8 Pa. Commonwealth Ct. 6, 301 A.2d 427 (1973) ; *Warner v. Civil Service Commission*, 5 Pa. Commonwealth Ct. 169, 289 A.2d 519 (1972). The Commission *may*, however, should it find that the single isolated instance of misconduct here does not warrant sustaining removal, use its broad discretionary power to *order* reinstatement without back pay, which this Court has described as providing a penalty similar to that which would have accompanied a departmental suspension without pay. *Baron; Warner.*