606 A.2d 977

**In re Appeal of Robert APPEL & Robert Kuzma, Jr. from the Order of Suspension by the Borough of Ambridge, Civil Service Commission, County of Beaver and Commonwealth of Pennsylvania.**

**Appeal of Robert APPEL and Robert Kuzma, Jr., Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 1992.

Decided April 2, 1992.

694

J. Lauson Cashdollar, for appellants.

Myron R. Sainovich, for appellee.

Before COLINS and PELLEGRINI, JJ., and BARRY, Senior Judge.

COLINS, Judge.

Robert Appel and Robert Kuzma, Jr. (appellants) appeal from the April 9, 1990 order of the Court of Common Pleas of Beaver County (Common Pleas) which affirmed the decision of the Civil Service Commission of the Borough of Ambridge (Commission) suspending appellants for thirty days.

Early in the morning, on August 29, 1989, Raymond Perciavalle (Perciavalle) hung himself while detained in a cell in the basement "lock-up" of the Borough of Ambridge (Borough) Police Department. At approximately 12:45 A.M. on that day, Perciavalle, who was suspected of pointing a gun at several people, was brought into the police station and was identified by a victim. He was taken to the lock-up at approximately 1:30 A.M. and was found hanging at approximately 2:30 A.M. Appellants were the police officers on night duty. Robert Appel (Appel) was the senior

officer in charge of the police department for the night shift and Robert Kuzma, Jr. (Kuzma) was the desk officer.

After the victim identified Perciavalle, Appel arrested him and charged him with two counts of simple assault and two counts of recklessly endangering another person by pointing a gun. Appel made the decision not to deprive Perciavalle of his belt, shoelaces, and other items of clothing. Kuzma, as desk officer, was responsible, in pertinent part, for monitoring Perciavalle by means of a television monitor located on the desk. Appel, as the arresting officer, was responsible for the paperwork necessary to effectuate the arrest and for taking Perciavalle to the district justice to be charged.

After the hanging, the Borough's Mayor suspended appellants without pay until the next regular meeting of the Borough Council. The Borough Council voted, on September 25, 1989, to suspend appellants for thirty days without pay. By their attorney's letter, dated October 9, 1989, appellants demanded a hearing before the Commission. That hearing was conducted on February 3 and 6, 1990. On April 9, 1990, the Commission issued its opinion and order sustaining the thirty day suspension of appellants.

Appellants appealed to Common Pleas and submitted a petition requesting that Common Pleas hear new, after-occurring and after-discovered evidence. The Borough opposed the petition, and it was denied by Common Pleas. The hearing on that petition, however, resulted in three stipulations which were added to the record. The stipulations indicated that no criminal charges were filed after Perciavalle's death, that a subsequent hanging occurred after which no criminal charges were filed, that the same Mayor and Chief of Police held office at the time of both hangings, and that the majority of the members of the Borough Council changed during the period between the two hangings. Common Pleas issued its opinion and order affirming the Commission and dismissing appellants' appeal, on April 9, 1991.

Appellants timely appealed to this Court and present three issues for review. The first two issues concern whether there is substantial evidence in the record to support the suspension of each appellant. The third issue concerns whether Common Pleas utilized the proper scope of review.

"A decision rendered by a civil service commission must be upheld unless there has been a violation of constitutional rights, an error of law, noncompliance with the Local Agency Law, 2 Pa.C.S. §§ 551–555, 751–754, or if any factual finding made by the commission necessary to support its decision is not supported by substantial evidence." *Moore v. Borough of Ridley Park,* 135 Pa.Commonwealth Ct. 555, 557 n. 2, 581 A.2d 711, 712 n. 2 (1990).

Appellants argue that they were suspended pursuant to Section 1190 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46190, which states that a police officer shall not be suspended except for certain, specified reasons, which include neglect or violation of any official duty, or inefficiency, or neglect.

■ Appellants argue that there is not substantial evidence in the record to support their suspensions. Appel argues that he had no official duty to deprive Perciavalle of his belt, that his training at the Allegheny County Police Academy could not be the basis for finding such a duty, that the record doesn't support a finding that he knew that the belt constituted a present and immediate danger to Perciavalle, that the duty to remove a belt is not so fundamental to a police officer's obligation that failure to do so is neglect when there is no departmental rule on this subject, that he had no duty to take the belt under the law of negligence, and that his failure to take the belt did not rise to neglect or inefficiency. Kuzma makes similar arguments regarding his alleged duty to monitor Perciavalle's behavior. He argues that he was only required to use reasonable care in monitoring Perciavalle, that his failure to detect Perciavalle hanging himself was not neglect of an official

duty, and that his failure did not constitute neglect or inefficiency.

The Borough essentially argues that the fact of the hanging and the testimony of the police chief constitute substantial evidence to support the suspensions of appellants. The police chief's testimony, however, does not support the Borough's argument. The police chief testified that there were no written policies concerning the "desk." (Notes of Testimony (N.T.), p. 29). He testified that there was no written procedure regarding the detention of individuals. (N.T., p. 42). He testified that there was no common understanding, written policy, or standing order regarding how often the desk officer was to view the television monitor. (N.T., p. 67). He admitted that, at the time of Perciavalle's hanging, it was difficult to see the back of that cell because of the way the lights and the camera were installed. (N.T., p. 73). Although the chief testified that it "was a common knowledge that all people that were to be incarcerated, they were to have their belts removed[,]" (N.T., pp. 44–45), his testimony was not corroborated by any of the five police officers from the Borough who testified. When asked whether there was any standing order, policy, or common understanding as to how a prisoner was to be treated or handled when detained, Officer Joseph J. David, Jr. answered, "Not that I know of." (N.T., p. 161). Officer Frank Guido was asked whether he normally searches an individual whom he arrests and takes away certain belongings. He said, "Depending on, you know, we arrest people we know. Throw them in a cell, belt, suspenders, shoe strings, just throw them in the jail." (N.T., p. 170). Officer David Sabol answered that there were no standing orders or any common understanding with respect to the handling of a detained prisoner that he could recall. He indicated that it was his understanding that the individual police officer had discretion regarding whether to remove certain items, including belts, from the detained prisoner. (N.T., p. 177). Each of the appellants also testified that there was

no common practice or understanding regarding removal of belts. (N.T., pp. 210, 278).

■ We agree with appellants that there is not substantial evidence to support their suspensions pursuant to Section 1190 of The Borough Code. Our review of the record reveals that there existed no written policies, procedures or orders regarding the detention of suspects or the duties of the desk officer.[1] With regard to Appel, we find that the decision regarding whether to remove Perciavalle's belt was a matter of Appel's judgment, and he exercised that judgment in the absence of any written directives or policy memoranda. In retrospect, Appel made a tragic error in judgment. We cannot say, however, that as a matter of law, every judgmental error by a police officer automatically rises to the level of official neglect.

■ With regard to Kuzma, we find that his duties involved more than monitoring Perciavalle's activities in the holding cell. The chief of police testified that the desk officer also handled incoming calls and acted as the dispatcher. Kuzma testified that he also assisted Appel in completing the paperwork necessary to effectuate Perciavalle's arrest. According to Kuzma, and his testimony is not disputed, he was not required to assist Appel, but on his crew it was customary for the desk officer to assist the arresting officer.[2] In the absence of any written policies, procedures, or verbal orders, we cannot say, as a matter of law, that Kuzma violated an official duty, or was inefficient, or neglectful, because he was away from the desk for "[a] minute here or a minute there." (N.T., p. 272). This is so

1. We agree with appellants that the duties at issue in their appeal are not so fundamental to their role as police officers to warrant our reliance on *Moore v. Borough of Ridley Park,* wherein a police officer who did not maintain radio contact with the county emergency unit was suspended for three days despite the lack of a written directive requiring him to maintain such contact.

2. Kuzma testified as follows: "Whenever I arrested somebody, my sergeant always did half of my paperwork for me. In the interest of time and just getting it over with, he'd always help me.... So we help each other. I guess if guys don't get along, they don't help each other. It's basically how it would work." (N.T., p. 274).

especially in light of the testimony of the chief of police, which indicated that the hanging could have occurred in as little as forty-five seconds. (N.T., p. 53).[3] Additionally, the chief of police testified that two or three minutes could pass without the desk officer monitoring a suspect in the holding cell.[4]

■ Appellants also argue that they had an absolute right to introduce new evidence in their appeal to Common Pleas and that Common Pleas, upon receiving such evidence, had to hear their appeal de novo. They argue that the interplay of The Borough Code and the Local Agency Law support their argument and that the entering of the three stipulations was sufficient to require Common Pleas to review the appeal de novo. We find that the record created by the Commission was complete and that the three stipulations neither altered the record nor altered the proper scope of review. We find, therefore, that Common Pleas properly employed the scope of review set forth at 2 Pa.C.S. § 754(b).

Accordingly, the April 9, 1991 order of the Court of Common Pleas of Beaver County is reversed.

## ORDER

AND NOW, this 2nd day of April, 1992, the order of the Court of Common Pleas of Beaver County in the above-captioned matter is reversed.

PELLEGRINI, Judge, concurring and dissenting.

I concur with the majority that Officer Kuzma was not neglectful of his duties by failing to stop Perciavalle from

**3.** The Notes of Testimony also reflect that the parties and the Commission recreated the hanging and that they determined that the hanging could have taken place in as little as twenty-five or twenty-six seconds. (N.T., pps. 189–191).

**4.** Attorney for appellants asked the chief of police the following question: "Now, you would concede then that a period of two or three minutes might well pass, given whatever the officer was doing, the nature of the prisoner, et cetera, when an officer would not be required to view that monitor?" The chief of police responded: "It's possible, yes." (N.T., p. 68).

committing suicide by hanging because of his failure to constantly monitor the television surveillance system of the jail cell in which Perciavalle was being held. It is undisputed that Officer Kuzma's duties required him to be away from his desk where the television was located for several minutes at a time, and the uncontradicted evidence is that the suicide could have occurred in as little as 45 seconds. I would, accordingly, reverse the Ambridge Civil Service Commission (Commission) finding that Officer Kuzma was neglectful of duty.

I dissent, however, as to the majority's holding that Officer Appel did not neglect his duty by not removing Perciavalle's belt when he placed him in the cell. Officer Appel contends that his failure to remove the belt was not improper, because no written rules had been promulgated as to which articles were to be removed when a prisoner was placed in a cell. The Ambridge Police Chief, however, testified that it "was common knowledge that all people that were incarcerated, they were to have their belts removed." (N.T. pp. 44–45). Even though other police officers testified that they were not aware of this "knowledge", the Commission chose to believe the Police Chief's testimony rather than those officers, and, accordingly, we are so bound. That finding alone is sufficient to sustain the Commission's decision.

Even if we believe that there was no policy or common knowledge as to which articles are to be removed from a prisoner when placed in a cell, then, as usual, in the myriad events that confront him or her daily, a police officer is required to use good judgment in determining what action should be taken in a specific situation. Just as no one would hold that a police officer exercised good judgment or neglected his or her duties in allowing a prisoner to retain a weapon when placed in a cell absent a written order prohibiting weapons, this same good judgment requires that a police officer remove a belt from a prisoner when placed in a cell. Not only can a belt be used by a prisoner to harm

him or herself, but a belt can also be used as a weapon to strangle a fellow police officer in the cell area.

A police officer is required to use common sense in the exercise of his judgment and should not be allowed to hide behind his or her failure to use common sense merely because there is "no written rule," in effect urging us to adopt a policy that a police officer cannot be held responsible for failure to exercise common sense, thereby sanctioning their neglect of duty. Because there is substantial evidence to support the Commission's finding that Officer Appel neglected his duty, I would affirm.