# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter Ray, :
             Appellant :
  :
       v. : No. 215 C.D. 2015
  :
Civil Service Commission of Borough :
of Darby and Borough of Darby :
  :
Peter Ray :
       v. : No. 359 C.D. 2015
  : Argued: October 6, 2015
Civil Service Commission of Borough :
of Darby and Borough of Darby :
  :
Appeal of: Borough of Darby :


BEFORE: HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE ANNE E. COVEY, Judge


OPINION BY JUDGE BROBSON       FILED: January 5, 2016


      Before this Court are the consolidated appeals of Peter Ray (Officer Ray) and the Borough of Darby (Borough), from an order of the Court of Common Pleas of Delaware County (trial court), which affirmed in part and reversed in part an order of the Civil Service Commission of the Borough of Darby (Commission). The Commission upheld the Borough's suspension and termination of Officer Ray's employment for neglect of duty and conduct unbecoming an officer. The trial court reversed the Commission's order to the extent it upheld Officer Ray's suspension without pay and affirmed the Commission's order to the extent it upheld the termination of Officer Ray's employment. Officer Ray appeals the

portion of the trial court's order affirming his termination. The Borough cross-appeals the portion of the trial court's order reversing Officer Ray's suspension without pay. We now affirm in part and reverse in part.

## I. BACKGROUND

The Commission's findings reveal the events leading to the Borough's suspension and, ultimately, its termination of Officer Ray's employment with the Borough. On February 28, 2012, at 6:03 p.m., Officer Ray, while employed as a police officer of the Borough, and two other officers, Officers Aaron Salisbury and Keith Parker, responded to a call of a woman yelling at 706 Pine Street. Officer Ray approached the residence and spoke to Henry Besson, who owned the home. Officers Ray, Salisbury, and Parker and Corporal Joseph O'Donnell entered the home and saw an adult woman and a child. When asked about the woman yelling, Mr. Besson responded that his intoxicated cousin was yelling earlier in the night. Officers Ray, Parker, and Salisbury entered the basement of the residence and spoke with an intoxicated woman who appeared to be about twenty years old. The woman, later identified as Fepee Kannah, exhibited slurred speech and spoke with a heavy accent. Officer Ray could not understand her name when she told him, nor did she provide identification. Ms. Kannah told Officer Ray that she lived at 706 Pine Street and that she was all right. Officer Ray testified that Ms. Kannah was not injured, falling down, or in distress. Ms. Kannah told Officer Ray that she wanted to dance.

At 6:09 p.m., Officers Parker and John Ettore responded to a priority call concerning a "possible subject with a gun." At 6:12 p.m., Officer Ray informed the radio room that the police had finished responding to the call at 706 Pine Street. Officer Salisbury responded to a call for an open door on North

Ninth Street at 6:20 p.m., and, at 6:23 p.m., Officer Ray indicated that he was "right around the corner" from the open door call. At 6:23 p.m., the radio room received another call of a woman yelling at 706 Pine Street. Officer Ettore communicated with the radio room regarding the call. Ten seconds later, Officer Ray responded on the radio that "we just came from there, they are putting her to bed." (Reproduced Record (R.R.) at 434a.) The Borough police did not respond to the second call concerning 706 Pine Street. At 6:32 p.m., the police received another call concerning 706 Pine Street. The caller indicated that the police had not responded last time and that there was "something going on" at the residence. Officer Parker informed the caller that the police had responded and that the woman was all right. Officer Parker responded to 706 Pine Street and informed Mr. Besson that he would be cited if the noise did not cease. On February 29, 2012, the police received another call concerning 706 Pine Street. The caller was Ms. Kannah, who indicated that she had been raped. The police responded to the call and arrested Mr. Besson and another man, Emmanuel Benson. Lieutenant Richard Gibney investigated the alleged rape of Ms. Kannah.[1]

Police Chief Robert Smythe conducted an investigation concerning Officer Ray's response to the calls concerning 706 Pine Street. On April 5, 2012, Chief Smythe issued Officer Ray a notice of charges pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985) (holding that "public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story"). The notice of charges explained that Officer Ray's response to the

---

[1] Mr. Besson and Mr. Benson were later charged but ultimately acquitted.

3

incident may constitute violations of the police department's rules and regulations, neglect of duty, and conduct unbecoming an officer. In support of the charges, Chief Smythe explained that Officer Ray failed to take appropriate action upon finding that Ms. Kannah was highly intoxicated, that Officer Ray waived Officer Ettore off the second call, that Officer Ray did not respond to the second call himself after waiving off Officer Ettore, and that Officer Ray failed to properly identify Ms. Kannah.

Officer Ray, represented by counsel, attended a *Loudermill* hearing on April 10, 2012. On April 11, 2012, Chief Smythe issued Officer Ray a notice of discipline, providing that Officer Ray's employment was being suspended without pay and that Chief Smythe recommended that the Borough Council terminate Officer Ray's employment. The notice of discipline stated that Officer Ray's conduct violated the police department's rules and regulations, and constituted conduct unbecoming an officer and neglect of duty. Specifically, the notice provided:

> The above-described [conduct] violates the disciplinary code contained in the Code of the Borough . . .: conduct unbecoming an officer, §§ 24-7.14 and § 24-7.4 – concerning repeated violations of departmental rules and regulations, or any other course of conduct indicating that a member has little or no regard for his responsibility as a member of the police department and knowingly and willfully making a false entry in any departmental report or record; § 24-7.35 concerning failure to take appropriate action concerning illegal activity.

> In addition, this conduct constitutes violation of the Borough . . . Police . . . Commission Rules and Regulations, §§ 503B. (neglect or violation of any official duty) and D. (inefficiency, neglect, intemperance, disobedience of orders or conduct unbecoming an officer).

4

(R.R. at 301a.) Chief Smythe further concluded that Officer Ray's conduct violated

> [the] Borough Police Department[']s Policy and Procedure Manu[a]l §§ 1.75 concerning repeated violations of departmental rules and regulations or any other course of conduct indicating that a member has little or no regard for his responsibility as a member of the police department; 4.01 concerning failure to take police action when necessary, at any time, in or out of uniform, and/or failure to make a written report of same to commanding officer[;] 4.25 [concerning f]ailure to conduct proper, th[o]rough and complete investigation; 4.50 concerning failure to properly patrol beat or sector, unauthorized absence from assignment, failure to respond to radio call, idle conversation or loafing; 20.002 concerning general responsibilities of members at the crime scene.

(*Id.* at 301a.) The Borough Council passed a motion to terminate Officer Ray's employment on April 18, 2012, and issued a notice of termination to Officer Ray on April 19, 2012. (*Id.* at 302a.)

Officer Ray demanded a hearing concerning the suspension and termination of his employment pursuant to Section 1191 of the former Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *formerly* 53 P.S. § 46191, which was then in effect.[2] During the hearing, the Commission heard the testimony of Lieutenant Richard Gibney, Detective Corporal Brian Pitts, Chief Smythe, and Officer Ray. The Borough attempted to introduce the written statements of Officers Parker, Salisbury, and Ettore, as well as a criminal investigation incident

---

[2] Section 1191 of the former Borough Code, along with the other provisions of the Borough Code, was repealed by Section 3(2) of the Act of April 18, 2014, P.L. 432, effective June 17, 2014. The provisions of the new Borough Code are now found in Title 8 of the Pennsylvania Consolidated Statutes, 8 Pa. C.S. §§ 101-3501.

report. Officer Ray objected to the admission of these documents as hearsay, but the Commission did not rule on the admission of the documents during the hearings.

The Commission ultimately sustained the suspension and termination of Officer Ray's employment. The Commission issued an adjudication report in which it concluded that Officer Ray had neglected his duty and committed conduct unbecoming an officer. The Commission based its conclusion on the following facts:

> After the second call to respond to 706 Pine St., Officer Ray, as a senior officer, "cancelled the call" by telling Officer Ettore that he had already handled the call. Officer Ettore, relying on this information from a senior officer, did not respond to the second call. Officer Ray violated [Borough police department] procedure that is to answer every call. Answering this second call was Officer Ray's responsibility. Furthermore, Officer Ray was negligent and committed conduct unbecoming for failing to take Ms. Kannah into his custody, or to take her to the hospital. The officer's indifference to her vulnerable condition destroyed public respect for and confidence in the [Borough] police department.

(Comm'n Adjudication Report at 16.) In so doing, the Commission explained that it did not rely on hearsay evidence in reaching this conclusion. The Commission made no findings or conclusions with respect to Officer Ray's failure to identify Ms. Kannah. Officer Ray appealed to the trial court. On February 5, 2015, the trial court issued an order affirming the termination of Officer Ray's employment and reversing the suspension of Officer Ray's employment. Officer Ray appeals the order of the trial court to the extent it affirmed the termination of his employment, and the Borough cross-appeals the order of the trial court to the extent it reversed the suspension of Officer Ray's employment.

6

## II. DISCUSSION

On appeal,[3] Officer Ray raises four issues. First, Officer Ray argues that the trial court erred in refusing to order the Commission to redact from the record the hearsay evidence upon which the Commission did not rely in issuing its order. Second, Officer Ray argues that his due process rights were violated where (1) he did not receive adequate pre-termination notice nor a pre-termination opportunity to be heard; (2) a written statement of charges was not filed with the Commission; and (3) the Commission allowed the admission of impermissible hearsay evidence. Third, Officer Ray contends that substantial evidence does not support the Commission's findings of fact. Fourth, Officer Ray argues that the trial court erred in concluding that the termination of his employment was neither excessive nor disparate. In its cross-appeal, the Borough contends that the trial court erred in reversing the suspension of Officer Ray's employment due to its conclusion that Chief Smythe did not have the authority to suspend Officer Ray's employment.

### A. Certification of the Record

We first address Officer Ray's argument that the trial court erred in refusing to order the Commission to redact from the record the hearsay evidence upon which the Commission did not rely in issuing its order. Officer Ray contends that the trial court could only review the evidence that was *actually considered* by the Commission. In its order, the Commission expressly provided that it did not

---

[3] This Court's standard of review of an order of the Commission is limited to considering whether substantial evidence supports necessary factual findings, whether an error of law was committed, or whether a violation of constitutional rights occurred. 2 Pa. C.S. § 704.

rely on hearsay evidence in rendering its decision as to the suspension and termination of Officer Ray's employment. According to Officer Ray, the hearsay evidence, therefore, should have been redacted from the record before it was certified to the trial court.

"In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency." Section 754(b) of the Local Agency Law, 2 Pa. C.S. § 754(b). This Court has defined a "full and complete record" as "a complete and accurate record of the testimony taken so that the appellant is given a base upon which he may appeal and, also, that the appellate court is given a sufficient record upon which to rule on the questions presented." *In re Thompson*, 896 A.2d 659, 668 (Pa. Cmwlth. 2005), *appeal denied*, 916 A.2d 636 (Pa. 2006). "A sufficiency claim will not be reviewed on a diminished record, 'but rather on the evidence actually presented to the finder of fact rendering the questioned verdict.'" *D'Alessandro v. Pa. State Police*, 937 A.2d 404, 410 (Pa. 2007) (quoting *Commonwealth v. Lovette*, 450 A.2d 975, 977 (Pa. 1982)).

Here, the Commission was required to certify the record to the trial court without redacting any evidence. Officer Ray argued before the trial court that substantial evidence did not support the Commission's findings and that the admission of certain hearsay evidence constituted reversible error. The full and complete record, including the evidence to which Officer Ray objected, was necessary for the trial court to review the issues presented. We, therefore, reject Officer Ray's argument that the trial court erred in refusing to order the Commission to redact from the record the hearsay evidence upon which the Commission did not rely in issuing its order.

8

## B. Due Process

We next address Officer Ray's argument that his due process rights were violated. Specifically, Officer Ray contends that: (1) he did not receive adequate pre-termination notice nor a pre-termination opportunity to be heard; (2) a written statement of charges was not filed with the Commission; and (3) the Commission allowed the admission of impermissible hearsay evidence.

### 1. Notice of Intent and Pre-termination Hearing

Officer Ray argues that his due process rights were violated because he did not have adequate notice that his employment may be terminated and because his hearing was insufficient to satisfy due process requirements. With respect to notice, Officer Ray contends that the language of the April 5, 2012 notice, informing him that he "may be subject to disciplinary action that could affect [his] pay," was insufficient to put him on notice that the Borough may consider the termination of his employment. Similarly, he contends that he was not provided with an opportunity to be heard with respect to the termination of his employment.

Due process requires that prior to the deprivation of a property interest, such as that which a civil service employee has in his or her employment, an employee must have notice and an opportunity to be heard. *Loudermill*, 470 U.S. at 542. The opportunity to be heard prior to the termination of a civil service employee's employment "need not be elaborate." *Id.* at 545. "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* The pre-termination hearing serves as "an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and

9

support the proposed action." *Id.* at 545-46. "[D]ue process is satisfied at the pre-termination stage, where (1) a post-termination hearing is available to the employee, (2) the employee receives oral or written notice of the reasons for (eventual) dismissal with explanation of the employer's evidence, and (3) the employee is given an opportunity to present his or her side of the story." *Veit v. N. Wales Borough*, 800 A.2d 391, 398 (Pa. Cmwlth. 2002), *appeal denied*, 815 A.2d 635 (Pa. 2003).

Here, the Borough complied with the pre-termination due process requirements. On April 5, 2012, Chief Smythe issued Officer Ray a notice of the charges against him. In the notice, Chief Smythe described in detail Officer Ray's conduct as to the various calls concerning 706 Pine Street and explained the evidence against Officer Ray. (R.R. at 295a-97a.) Chief Smythe identified the numerous departmental rules and regulations which Officer Ray allegedly violated. (*Id.* at 297a.) The notice further provided that Officer Ray could respond to the charges in writing. (*Id.* at 295a.) On April 10, 2012, Officer Ray, represented by counsel, attended a *Loudermill* hearing, where he had the opportunity to refute the charges against him. On April 11, 2012, Chief Smythe issued Officer Ray a notice of discipline, in which he explained that Officer Ray's employment was suspended without pay. (*Id.* at 298a-301a.) Chief Smythe indicated that he would recommend to the Borough Council that Officer Ray's employment be terminated. This process complied with pre-termination due process requirements, because Officer Ray was informed of the charges against him and provided with an opportunity to respond to those charges. *See Veit*, 800 A.2d at 398. Despite Officer Ray's arguments, the Borough was not obligated to provide additional notice or an additional hearing. Officer Ray had both notice and an opportunity to

10

be heard with respect to the potential termination of his employment, and we, therefore, reject Officer Ray's argument.[4]

## 2. *Statement of Charges*

Officer Ray next contends that his due process rights were violated because no statement of charges was ever filed with the Commission as required by Section 1190 of the former Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *formerly* 53 P.S. § 46190.[5] Section 1190 of the former Borough Code provides that "[a] written statement of any charges made against any person . . . employed [by the Borough] shall be furnished to such person within five days after the same are filed." Section 1191 of the former Borough Code provides that the Commission must conduct a pre-termination hearing "within a period of ten days from the filing of charges in writing." Officer Ray contends that although he received notice of the charges against him, the failure of the Borough to file a statement of charges with the Commission constitutes a denial of due process.

Here, Officer Ray received notice of the charges on April 5, 2012, five days before his *Loudermill* hearing on April 10, 2012. As noted above, the April 5, 2012, notice of charges and the *Loudermill* hearing satisfied the pre-termination due process requirements. On April 11, 2012, Chief Smythe issued Officer Ray a notice of discipline, and on April 19, 2012, the Borough

[4] Within this argument, Officer Ray appears to contend that he was deprived of due process, because his *Loudermill* hearing was held before Chief Smythe rather than the Borough Council. Officer Ray cites no case law in support of this contention. Because we reverse on other grounds, *see infra* Parts II.C.1-2, we need not address this argument.

[5] In his brief, Officer Ray cites to the current version of the Borough Code which, as noted above, became effective in 2014. Because the process to which Officer Ray objects took place in 2012, we base our analysis on the provisions of the former Borough Code.

Council issued Officer Ray a notice of termination. Officer Ray demanded hearings after receiving the April 11, 2012, and April 19, 2012, notices regarding disciplinary action. The fact that the Borough issued the notice of charges and held a *Loudermill* hearing before the filing of the charges with the Commission is irrelevant.[6] Officer Ray had sufficient notice of the charges to prepare a defense. We, therefore, reject Officer Ray's argument that his due process rights were violated because no statement of charges was ever filed with the Commission.

### 3. *Hearsay*

Officer Ray next argues that the Commission allowed the admission of impermissible hearsay evidence, thereby depriving him of his right to cross-examine certain witnesses. Specifically, Officer Ray takes issue with the admission of the written statements of Officers Parker, Salisbury, and Ettore, as well as a criminal incident investigation report "contain[ing] numerous hearsay statements of individuals interviewed for purposes of the criminal investigation." (Officer Ray Br. at 29.)

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove

---

[6] Officer Ray contends that "the failure to provide the required statement, in the manner prescribed by law constitutes a denial of due process." (Officer Ray Br. at 25.) In support of this proposition, Officer Ray cites *Cerceo v. Borough of Darby*, 281 A.2d 251 (Pa. Cmwlth. 1971). *Cerceo*, however, is distinguishable from the instant matter. In *Cerceo*, the appellants were *never* provided with a written statement of the charges against them. Consequently, the "appellants were not afforded the opportunity of answering written charges." *Cerceo*, 281 A.2d at 252. The circumstances in *Cerceo* unquestionably constituted a deprivation of due process. Here, however, Officer Ray experienced no such deprivation. The Borough's failure to file a statement of charges had no effect on Officer Ray's receipt of notice and an opportunity to be heard.

the truth of the matter asserted in the statement." Pa. R.E. 801(C). Local agencies, however, are not bound by technical rules of evidence, and "all relevant evidence of reasonably probative value may be received." Section 554 of the Local Agency Law, 2 Pa. C.S. § 554. Hearsay is admissible in administrative proceedings when it is corroborated or otherwise shows indicia of reliability. *Unemployment Comp. Bd. of Review v. Ceja*, 427 A.2d 631, 640 (Pa. 1981). A finding of fact based solely on hearsay evidence does not constitute reversible error if the finding is unnecessary to support the adjudication. *Davis v. Civil Serv. Comm'n*, 820 A.2d 874, 879 (Pa. Cmwlth. 2003).

Officer Ray contends that the Commission committed reversible error in admitting hearsay evidence,[7] yet he fails to identify the Commission's findings of fact that are based solely on hearsay evidence and necessary to the adjudication. Rather, Officer Ray's argument appears to be that because he did not have the opportunity to cross-examine the authors of the written statements and the criminal incident investigation report, he was deprived of due process. In support of this argument, Officer Ray cites *Civil Service Commission of the Borough of Vandergrift v. Polito*, 156 A.2d 99 (Pa. 1959). In *Polito*, the Civil Service Commission of the Borough of Vandergrift terminated a police officer's employment because the police officer committed a criminal offense. The police officer requested and was granted a hearing. Prior to the civil service commission arriving at a decision in the matter, however, the chief of police sent a letter to the civil service commission supporting the testimony of a witness against the police officer. The civil service commission did not disclose the contents of the letter.

---

[7] There is no dispute that the evidence at issue constituted hearsay.

13

Further, the civil service commission heard the testimony of an additional witness in the absence of the police officer and his counsel. The common pleas court affirmed the civil service commission's termination of the police officer's employment, and the police officer appealed to the Supreme Court of Pennsylvania. On appeal, the police officer argued that he was entitled to a hearing, that he was entitled to be present at the hearing, and that a record of the hearing must be maintained by the civil service commission. The Supreme Court, quoting *In re Shenandoah Suburban Bus Lines*, 46 A.2d 26, 29 (Pa. Super. 1946), explained:

> In hearings before the [civil service] commission all parties must be apprised of the evidence submitted, and must be given opportunity to cross-examine witnesses; to inspect documents and to offer evidence in explanation or rebuttal according to well understood rules. In no other way can a party maintain its rights, or make a defense, or test the sufficiency of the facts to support the finding. And while the [civil service] commission is an administrative body, and even where it acts in a quasijudicial capacity and is not limited by the strict rules as to the admissibility of evidence which prevail in suits between private parties, the more imperative it is to preserve the essential rules of evidence by which rights are asserted or defended. *Otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the commission had before it extraneous, unknown, but presumptively sufficient information to support the finding.*

*Polito*, 156 A.2d at 101 (citations omitted) (emphasis added). The Supreme Court further explained that this was not "a case where an administrative tribunal merely received some evidence which was hearsay but a case where evidence was secretly received and acted upon in clear defiance of the requirement of the statute." *Id.*

14

*Polito* is clearly distinguishable from the instant matter. There, evidence was admitted and testimony heard in the absence of the police officer and counsel. The Supreme Court in *Polito* sought to prevent civil service commissions from basing their findings of fact on evidence not in the record. Here, Officer Ray and his counsel were both present for the hearings concerning the termination of Officer Ray's employment. No evidence was admitted or testimony heard in the absence of Officer Ray and his counsel. As noted above, Officer Ray had the chance to present a defense against the charges. Although hearsay evidence was offered, it was offered in the presence of Officer Ray and his counsel, thereby providing an opportunity for Officer Ray's counsel to object. In fact, Officer Ray's counsel *did* object to the admission of that evidence, and the Commission noted in its adjudication report that it did not consider the hearsay evidence. We, therefore, reject Officer Ray's argument that the Commission committed reversible error in admitting hearsay evidence.

## C. Substantial Evidence

We next address Officer Ray's argument that substantial evidence does not support the Commission's findings of fact concerning the charges of neglect of duty and conduct unbecoming an officer. Substantial evidence is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Dep't of Health*, 437 A.2d 811, 813 (Pa. Cmwlth. 1981). "It is well settled that the Commission as fact-finder below is the ultimate arbiter of questions of credibility and the weight to be given conflicting evidence." *D'Amato v. Dep't of Gen. Servs.*, 427 A.2d 1287, 1288-89 (Pa. Cmwlth. 1981). "[T]his Court is not empowered to 'weigh the evidence or substitute its judgment on

15

factual matters for that of the fact finder.'" *Id.* (quoting *Dep't of Pub. Welfare v. Mawn*, 368 A.2d 1316, 1319 (Pa. Cmwlth. 1977)).

### 1. *Neglect of Duty*

Officer Ray argues that substantial evidence does not support the Commission's finding that Officer Ray neglected his duty by "cancelling" a call to which the police department should have responded. It is well-settled that "a violation of a specific written directive is not a prerequisite to a finding of neglect of official duty." *Borough of Edgeworth v. Blosser*, 672 A.2d 854, 857 (Pa. Cmwlth.), *appeal denied*, 683 A.2d 885 (Pa. 1996). Not "every judgmental error by a police officer automatically rises to the level of official neglect." *Appeal of Appel*, 606 A.2d 977, 980 (Pa. Cmwlth. 1992).

We agree that substantial evidence does not support this finding. During the hearings before the Commission, Officer Ray testified that in response to the second call concerning 706 Pine Street, he advised Officer Ettore "that it was a drunken female or a female who was intoxicated at the time, and the family was supposed to be putting her to bed." (R.R. at 682a.) Officer Ray explained why he responded this way:

> Any time you get a second and third call to an address that you were at, it's pretty much police protocol you get on the radio and you let whatever officer is going to that call know what you had the first time, to give them a heads up as to what was going on earlier so they know at least an idea of what they're getting into.

(*Id.*) The information provided by the radio room also reveals that Officer Ray stated that "we just came from there they are putting her to bed." (*Id.* at 240a.) Officer Ray testified that only the corporal or lieutenant has the authority to cancel a call, and that Officer Ray did not instruct Officer Ettore to disregard the call. (*Id.* at 681a, 682a-83a.)

16

Officer Ettore did not testify before the Commission. Chief Smythe, however, testified concerning the call and Officer Ettore's response. Chief Smythe explained that "[Officer] Ettore took the call and [Officer] Ray canceled the call; and [Officer Ray] didn't use the word canceled, but [he] said we've already been there, they're putting her to bed. And with that the 911 center clears out the call." (*Id.* at 643a.) He further testified that Officer Ettore did not respond to the call, because "[Officer] Ray took over the call, telling him that he was already there, the call was handled." (*Id.* at 193a.)

Chief Smythe's testimony does not constitute substantial evidence on the material factual question of whether Officer Ettore did not respond to the second call because he interpreted Officer Ray's radio communication as a cancellation of the second call. Although local agencies, such as civil service commissions, are not bound by technical rules of evidence, Section 554 of the Local Agency Law, 2 Pa. C.S. § 554, this does not mean that these local proceedings are evidentiary free-fire zones. Although the evidentiary standards are relaxed in local agency proceedings, there are fundamental rules of law to which an agency must adhere to ensure fairness to all parties. For example, in *A.Y. v. Department of Public Welfare, Allegheny County Children & Youth Services*, 641 A.2d 1148 (Pa. 1994), our Supreme Court considered the use of hearsay evidence in administrative proceedings. In *A.Y.*, the Department of Public Welfare Office of Hearings and Appeals (Department) conducted an administrative hearing concerning the denial of A.Y.'s request for the expungement of A.Y.'s name from the Statewide Child Line and Abuse Registry, during which it admitted hearsay evidence. In affirming the denial of A.Y.'s request for expungement, the Department based its conclusion solely on hearsay testimony. This Court affirmed

17

the denial. A.Y. appealed to our Supreme Court, which, in reversing this Court, noted that in other administrative proceedings, this Court had "held that the hearsay rule is not a mere technical rule of evidence, but a fundamental rule of law which ought to be followed by agencies when *facts crucial to the issue* are sought to be placed on the record and an objection is made thereto." *A.Y.*, 641 A.2d at 1151. The Supreme Court explained that by allowing the Department to rely solely on hearsay evidence in child abuse expungement cases, it is "possible for accusations of child abuse, as reported by a third party, to constitute sufficient substantive evidence to register an individual citizen on a 'black list' for all time." *Id.* at 1152. Accordingly, the Supreme Court held that uncorroborated hearsay evidence cannot support a finding of abuse, unless certain requirements are satisfied.

For purposes of this matter, it is a fundamental rule of law that only witnesses with personal first-hand knowledge may testify as to material factual issues. *See* Pa. R.E. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also William Penn Sch. Dist. v. Dep't of Educ., Div. of Food and Nutrition*, 902 A.2d 583, 588 n.4 (Pa. Cmwlth. 2006) (providing that Pa. R.E. 602 applies to agency proceedings). Although the Borough called Chief Smythe to testify on the crucial factual question of why Officer Ettore did not respond to the second call, the Borough elicited no testimony from Chief Smythe as to his first-hand knowledge on this subject. Indeed, it seems that the only way Chief Smythe could acquire such knowledge is through an out-of-court discussion with Officer Ettore himself. This would run afoul of yet another fundamental rule of law—i.e. hearsay. Accordingly, Chief Smythe's testimony cannot be considered

18

substantial evidence to support the Commission's finding on the crucial question of whether Officer Ray's radio communication caused Officer Ettore not to respond to the second call.

Further, Chief Smythe's testimony concerning the language Officer Ray used on the radio does not support the charge of neglect of duty for cancelling the call. Chief Smythe's testimony reveals only that Officer Ray stated that he had responded to the call at 706 Pine Street and that the individuals at the residence were putting an intoxicated woman to bed. Notably, Chief Smythe did not testify that Officer Ray told other officers not to respond. In the absence of Chief Smythe's testimony, the only evidence regarding the cancelled call is that of Officer Ray, who explained that not only did he not cancel the call, but that an officer does not have the authority to cancel a call. Accordingly, we reverse the order of the trial court affirming the termination of Officer Ray's employment for neglect of duty for cancelling the call.

Officer Ray also contends that substantial evidence does not support the Commission's finding that Officer Ray neglected his duty by failing to take Ms. Kannah into his custody or to the hospital. Specifically, Officer Ray contends that there was no evidence presented that Ms. Kannah required medical treatment. Officer Ray also contends that although he did not issue Ms. Kannah a summary offense citation and take her into custody, his choice not to do so was a proper exercise of discretion, and, therefore, insufficient to support a charge for neglect of duty.

We agree that the evidence above does not support a charge of neglect of duty for failing to take Ms. Kannah into custody or to take her to the hospital. The instant matter is analogous to *Appeal of Appel*. In *Appeal of Appel*, a police

19

officer made the decision not to deprive a prisoner of his belt or shoelaces prior to detaining him in a cell. The prisoner hung himself while he was detained. After the death of the prisoner, the Borough of Ambridge's mayor suspended the police officer without pay, and the borough council later suspended the police officer for thirty days. The civil service commission upheld the suspension, and the common pleas court affirmed. The police officer appealed to this Court, arguing that substantial evidence did not support his suspension for neglect of duty. Specifically, he argued that there was no official duty to deprive the prisoner of his belt and that "the duty to remove a belt is not so fundamental to a police officer's obligation that failure to do so is neglect when there is no departmental rule on the subject." *Appeal of Appel*, 606 A.2d at 697. We agreed with the police officer. We concluded that there was no evidence of written policies or procedures with respect to the removal of items from prisoners and that the evidence indicated that the choice to remove such items was discretionary. Specifically, "the decision regarding whether to remove [the prisoner's] belt *was a matter of [the police officer's] judgment*, and he exercised that judgment in the absence of any written directives or policy memoranda." *Id.* at 699 (emphasis added).

Here, the choice regarding whether to take Ms. Kannah into custody or to take her to the hospital was a matter within Officer Ray's discretion. There was no evidence of written policies or procedures regarding a police officer's duty in this situation. During the hearing before the Commission, Officer Ray testified that upon entering the basement of 706 Pine Street, he encountered a "young female" who "appeared intoxicated." (R.R. at 689a.) Officer Ray spoke to her and asked her for her name, but he could not understand her response, because she had a thick accent and was slurring her words. (*Id.* at 743a.) She did not give Officer

20

Ray any identification. (*Id.* at 712a.) Officer Ray asked her to keep the noise level down, and she responded that she "just want[ed] to dance." (*Id.* at 689a.) She informed Officer Ray that she "was all right." (*Id.*) There was at least one unidentified male in the basement. (*Id.* at 709a.) Officer Ray testified that he did not give Ms. Kannah a summary offense citation, but that it was *within his discretion* to do so. (*Id.* at 735a.) He explained that if he had removed Ms. Kannah from 706 Pine Street, he "would have had to bring her to the police station," but that he would later have to take "her back to the house." (*Id.* at 694a-95a.)

During the hearing before the Commission, Detective Corporal Pitts also testified concerning the authority of an officer to take a young, intoxicated woman into custody or to take her to the hospital. Detective Corporal Pitts testified that a police officer can place an individual under arrest for underage drinking and take the individual to the police department. (*Id.* at 525a.) He further explained:

> Q. If you came across a 19-year-old drunk woman in a house full of men where no one knew her name, would you leave that woman in the house or would you take her to the department to get her identification?
>
> A. I'd probably take her.

(*Id.* at 522a.) Detective Corporal Pitts also testified that he would *probably* have taken Ms. Kannah to the hospital to "check on her well-being." (*Id.* at 523a.) With respect to hospitalization, Detective Corporal Pitts further testified:

> Q. Would you leave her at the hospital?
>
> A. It depends on the circumstances, you know. How intoxicated is she? Is there someone that can come pick her up? How old is she? Does she have a ride? I mean a lot of things come in to factor. Each different - - each incident is different.

21

Q. I would agree. And it all depends on what is presented to you or any other officer at the time and what discretion that officer, you or any other officer, exercises based on what you or another officer is confronted with at the time; correct?

A. I agree.

(*Id.* at 523a-24a.)

The evidence presented to the Commission does not support the charge of neglect of duty for failing to take Ms. Kannah into custody or to the hospital. Rather, the evidence reflects that Officer Ray had the discretion to issue a summary offense citation to Ms. Kannah and to take her into custody. He also had the discretion to take her to the hospital. That he did not do so may constitute an error of judgment, but this error does not rise to the level of official neglect. Accordingly, we reverse the order of the trial court affirming the termination of Officer Ray's employment for neglect of duty for failing to take Ms. Kannah into custody or to the hospital.[8]

### 2. *Conduct Unbecoming an Officer*

Officer Ray argues that substantial evidence does not support the Commission's finding that Officer Ray engaged in conduct unbecoming an officer by failing to take Ms. Kannah into his custody or to the hospital. To show that an officer has engaged in conduct unbecoming an officer, "it must be shown that his

---

[8] The Borough contends that "[b]y failing to get the name, age and identifying information of the young 'visibly intoxicated' 'female' and other persons at 706 Pine Street before clearing the call, Officer Ray left the scene without doing the most elemental police work." (Borough Br. at 35.) While the Commission could have concluded that Officer Ray's failure to identify Ms. Kannah constituted a neglect of duty, the Commission failed to make any findings or conclusions concerning this subject. Instead, the Commission based its conclusion on Officer Ray's cancellation of the call and his failure to take Ms. Kannah into custody or to the hospital.

22

conduct adversely affected the morale or efficiency of the police force or tended to destroy public respect for municipal employees and confidence in the operation of municipal services." *Kazmarek v. New Bethlehem Borough Council*, 478 A.2d 514, 517 (Pa. Cmwlth. 1984). "To be . . . unbecoming a police officer, conduct must only 'be such as to offend publicly accepted standards of decency.'" *Borough of Darby v. Coleman*, 407 A.2d 468, 471 (Pa. Cmwlth. 1979) (quoting *Zeber Appeal*, 156 A.2d 821, 825 (Pa. 1959)). Officer Ray contends that he was not the only officer to encounter Ms. Kannah at 706 Pine Street, and, therefore, he was not the only officer responsible for the loss of public respect and lowered morale of the police department which resulted from the incident. He was, however, the only officer whose employment was terminated.

Substantial evidence does not exist to support the finding that Officer Ray engaged in conduct unbecoming an officer by failing to take Ms. Kannah into his custody or to the hospital. During the hearing before the Commission, Chief Smythe testified that "[w]ithin the days after this happened, . . . a lot of people were milling around, looking at the house. And the initial [caller] was extremely upset and he was talking to the neighbors." (R.R. at 595a.) He explained that he had spoken to seven or eight of the neighbors. (*Id.* at 595a-96a.) Chief Smythe stated that the police "were just bombarded with questions, what about - - what about what the cops did, how come the cops didn't respond, what's going to happen to the cops, is this going to get swept under the rug." (*Id.* at 596a.) Chief Smythe described the neighbors as "extremely upset about the way the police handled [the incident], especially with [the initial caller] coming out and saying I called, I called, I called, and nobody came." (*Id.* at 597a.) With respect to the police department's morale, Chief Smythe testified:

23

I mean certainly every member here was upset. It went through the department. It was pitting police officer against police officer - - not the guys that were involved; the squads that were off, but you know, were pointing fingers at, you know, [Officer] Ray saying that it wasn't his call, it was [Officer] Ettore's call.

(*Id.* at 598a.)

As noted above, Officer Ray had the discretion to issue a summary offense citation to Ms. Kannah or take her to the hospital. While we understand that the community was upset with how the police department responded to the incident involving Ms. Kannah, a charge of conduct unbecoming an officer must be supported by more than a disagreement with an officer's exercise of discretion. *See, e.g.*, *Powell v. Middletown Twp. Bd. of Supervisors*, 782 A.2d 617, 621 (Pa. Cmwlth. 2001) (upholding termination of officer's employment for conduct unbecoming officer where officer pointed service weapon at fellow officer in public), *appeal denied*, 797 A.2d 918 (Pa. 2002); *Feliciano v. Borough of Norristown*, 758 A.2d 295, 297 (Pa. Cmwlth. 2000) (upholding termination of officer's employment for conduct unbecoming officer where officer initiated domestic dispute with wife, brandished service weapon, drove wrong way down a one-way street, and had to be physically removed to police department); *Borough of Riegelsville v. Miller*, 639 A.2d 1258, 1262-63 (Pa. Cmwlth.) (concluding that termination of police chief's employment for conduct unbecoming officer was supported by police chief's adultery and failure to pay child support), *appeal denied*, 639 A.2d 676 (Pa. 1994). Officer Ray's choice not to take Ms. Kannah into custody or to the hospital, although it may constitute an error in judgment, does not support a charge of conduct unbecoming an officer. Accordingly, we reverse the order of the trial court affirming the termination of Officer Ray's

employment for conduct unbecoming an officer for failing to take Ms. Kannah into custody or to the hospital.

## D. Penalty Modification

We next address Officer Ray's argument that the trial court erred in concluding that the termination of Officer Ray's employment was neither excessive nor disparate so as to justify a modification of the penalty imposed upon Officer Ray. Officer Ray draws attention to the fact that two other officers as well as a police supervisor also responded to the call at 706 Pine Street. No disciplinary action was taken against at least one of the officers involved in the incident. The supervisor's employment was temporarily suspended and his rank was temporarily reduced, but his employment was not terminated. Officer Ray further contends that because the charges against him were supported solely by hearsay evidence, the trial court erred in concluding that it did not have the authority to modify the penalty imposed upon him. Because we reverse the trial court's order affirming the termination of Officer Ray's employment for neglect of duty and conduct unbecoming an officer, we need not address this argument.

## E. Police Chief's Authority to Suspend Employment

We next address the Borough's cross-appeal. The Borough contends that the trial court erred in reversing the suspension of Officer Ray's employment. Specifically, the Borough argues that the trial court erred in concluding that Chief Smythe did not have the authority to suspend Officer Ray's employment. Rather, the trial court held that under the Borough Code, only the Borough Council and the Mayor have the authority to suspend a police officer's employment.

Under Section 1121 of the former Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *formerly* 53 P.S. § 46121, the Borough

25

Council "may . . . appoint and remove, or suspend, or reduce in rank, one or more suitable persons . . . as borough policemen." The Mayor has "full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where and the manner in which, the chief of police and the police force shall perform their duties," but the Mayor may "delegate to the chief of police . . . supervision over and instruction to subordinate officers in the manner of performing their duties." *Id.* The Mayor also has the authority to suspend police officers in limited circumstances:

> In addition to the powers of council to suspend policemen, the mayor may, for cause and without pay, suspend any policemen until the succeeding regular meeting of the council, at which time or thereafter the council may . . . suspend, discharge, reduce in rank or reinstate with pay, such policemen.

Section 1124 of the former Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *formerly* 53 P.S. § 46124.

The Borough contends that the Borough Council properly delegated the power to suspend a police officer through the Borough's Civil Service Ordinance, adopted in 1985. Section 505(C) of the Civil Service Ordinance provides that "[t]he B[orough Council], or the Chief of Police when the B[orough Council] is not in session, may suspend [a police officer] without pay pending the determination of the charges against him." As noted above, the exclusive authority to suspend a police officer rests with the Borough Council. Nothing in the former Borough Code, however, authorizes the Borough Council to delegate its power to suspend a police officer to the police chief. *See* Section 1121 of the former Borough Code. The Mayor has limited authority to temporarily suspend a police officer when the Borough Council is not in session, but the former Borough Code does not grant the Mayor the power to delegate his or her limited authority to the

26

police chief. *See* Sections 1121 and 1124 of the former Borough Code. Rather, the former Borough Code only allows the Mayor to delegate to the police chief his or her power to supervise and instruct subordinate officers in the manner of performing their duties. Regardless, Section 505(C) of the Civil Service Ordinance purports to delegate the Borough Council's power to suspend the police chief. The Borough Council, however, had no authority in the former Borough Code to delegate either its own authority to the police chief or to delegate the Mayor's limited authority. We, therefore, reject the Borough's argument that the trial court erred in reversing the suspension of Officer Ray's employment.[9]

## III.   CONCLUSION

Accordingly, we reverse the portion of the trial court's order affirming the termination of Officer Ray's employment for neglect of duty for cancelling the call, neglect of duty for failing to take Ms. Kannah into custody or to the hospital, and conduct unbecoming an officer for failing to take Ms. Kannah into custody or to the hospital, because substantial evidence does not support these charges. With respect to the Borough's cross-appeal concerning the suspension of Officer Ray's employment, we affirm the trial court's order, because Chief Smythe did not have the authority to suspend Officer Ray's employment.

P. KEVIN BROBSON, Judge

---

[9] Officer Ray contends that the Commission conducted its proceedings and issued its adjudication report in the absence of lawfully adopted and approved rules and regulations. Specifically, Officer Ray argues that there is no evidence to show that Section 505(C) of the Civil Service Ordinance was properly approved by the Borough Council. Because we conclude that the Borough Council did not have the authority to delegate the Mayor's power to temporarily suspend a police officer's employment, we need not address this argument.

27

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter Ray,
                              :
                    Appellant :
                              :
         v.                   :    No. 215 C.D. 2015
                              :
Civil Service Commission of Borough :
of Darby and Borough of Darby :
                              :
Peter Ray                     :
         v.                   :    No. 359 C.D. 2015
                              :
Civil Service Commission of Borough :
of Darby and Borough of Darby :
                              :
Appeal of:  Borough of Darby  :

# **O R D E R**

AND NOW, this 5th day of January, 2016, the order of the Court of Common Pleas of Delaware County (trial court), is AFFIRMED in part and REVERSED in part.  The trial court's order is AFFIRMED to the extent that it reversed the Borough of Darby's (Borough) suspension of Peter Ray's (Officer Ray) employment without pay.  The trial court's order is REVERSED to the extent that it affirmed the Borough's termination of Officer Ray's employment.  The Borough is hereby directed to reinstate Officer Ray with back pay from the date of his suspension.

_____
P. KEVIN BROBSON, Judge